[No. 5015.]

JAMES MURRAY AND J. A. ANTHONY *v.* THE STATE.

MALICIOUS MISCHIEF—INFORMATION—STATUTE CONSTRUED.—The offense defined by Article 683 of the Penal Code of this State, relates to the destruction of, or injuries done to, "growing fruit, corn, grain, or other *agricultural* product, or property, real or personal." The provisions of the said article, confined expressly to injuries done to products, or property, exclusively agricultural in its nature, whether real or personal, can not be extended by intendment, or otherwise, to comprehend property of any other description. Information, therefore, which sought to implead the accused, under the provisions of the said article, for wilfully and mischievously injuring a locomotive engine, was insufficient to charge an offense, and, the trial court, erring in overruling the motion to quash the information, should have sustained the motion in arrest of judgment.

ON MOTION FOR REHEARING.

1. PRACTICE—INTERPRETATION OF THE CODES.—It is an established rule of statutory construction, whether the statutes to be construed are civil or criminal, that "grammatical errors shall not vitiate a law, and a transposition of words and clauses may be resorted to when the sentence, or clause, is without meaning as it stands, and in no case shall the punctuation of a law control or affect the intention of the Legislature in the enactment." But see the opinion *in extenso* for the suggestion of the court to the effect that neither the grammar nor the punctuation of a statute is involved in this case, and that neither was considered, or adverted to, in the original opinion on the appeal.

2. SAME.—Article 9 of the Penal Code of this State provides as follows: "This code, and every other law upon the subject of crime which may be enacted, shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects, and no person shall be punished for an offense which is not made penal by the plain import of the words of a law."

3. SAME.—In construing a statute, it devolves upon the court to give effect to the legislative intention in enacting it. Such intention is ascertained primarily and chiefly from the language used by the Legislature to express its meaning. The presumption obtains that, in the enactment of statutes, especially those creating and punishing crimes, the legislative power weighed well the words it employed, and it becomes the duty of the court construing them to regard closely, and even adhere to the language employed by the Legislature to express its purpose. If the words are not technical nor words of art, the presumption is that they were used in their ordinary, popular or general signification. In construing a statute, it is to be taken, unless the contrary appears, that the words

in which it was expressed were used by the Legislature in no unusual or extraordinary signification, but in their common or every day meaning. The legitimate function of the court is to interpret the legislative will, and not to supply or supplement it, or extend it by construction or intendment.

4. SAME.—Stated in another form, the rule is as follows: "To ascertain this (the legislative) intent, it is the duty of the court to find, by other established rules, what was the fair, natural and probable intent of the Legislature. For this purpose the language employed in the act is first to be resorted to. If the words employed are free from ambiguity and doubt, and express plainly, clearly and distinctly the intent, according to the most natural import of the language, then there is no occasion to look elsewhere."

5. SAME.—Another rule upon the same subject is stated as follows: "If the statute is drafted in clear and unambiguous language, and the literal meaning of the language leads to no absurd result, and is not repugnant to any other parts of the statute, or to other acts *in pari materia*, such literal meaning should be accorded to the act in its exposition." See the opinion *in extenso* for a review of the rules on the subject.

6. SAME.—Article 683 of the Penal Code is as follows: "If any person shall wilfully and mischievously injure or destroy any growing fruit, corn, grain, or other agricultural product or property real or personal, of any description whatever, in such manner as that the injury does not come within the description of any of the offenses against property otherwise provided for by this code, he shall be punished by fine not exceeding one thousand dollars." *Held,* by a majority of the court, that the language of the said Article is plain, clear and unambigious, and admits of no other interpretation than that the Legislature, in enacting the said Article, intended only to provide a punishment for injuries to agricultural product or property, and that its intention comprehended no property of any other character. Note also the criticism of the court of the proposition of the State to supply certain words by implication.

7. SAME.—Note the dissenting opinion of Hurt, Judge, to the effect that, though the rules of construction announced by the majority of the court are correct, they are not applicable to this case, because non-essential to the interpretation of the said Article 683, which was not intended by the legislative power to embrace only agricultural product or property, but to apply to all property of any description whatever.

8. SAME—CASES DISTINGUISHED.—Note the opinion of the court for the distinction between this case and the cases of Ritter v. The State, 33 Texas 608, and Rose v. The State, 19 Texas Court of Appeals, 470.

APPEAL from the County Court of McLennan. Tried below before the Hon. W. W. Evans, County Judge.

The conviction in this case was had upon an information which charged the appellants with wilfully and mischievously injuring a locomotive engine, the property of the Missouri Pacific railway company, in McLennan county, Texas, on the eighth day of

March, 1886.   A fine of one dollar each was the penalty assessed against the appellants.

The sufficiency of the information to charge an offense against the laws of this State was the only issue upon which the case was appealed, and the transcript brings up no statement of facts.

The grounds stated in the State's motion for rehearing are as follows:

1.   In the original brief of the appellee the attention of this court was distinctly called to the fact that the Supreme Court, in the case of Ritter v. The State, 33 Texas, 608, where the conviction was for destroying a house under Article 2347, Paschal Digest (which was the same as Article 683 of the Revised Penal Code, except as to penalty), had construed the statute and held that the provisions of the statute embraced *a house;* which did not restrict its provisions to injuries done to agricultural property or products, either real or personal, as a house cannot be held to be *agricultural products either real or personal.*

2.   The Revised Penal Code was adopted in view of the construction of the statute made by the Supreme Court in Ritter v. The State, above cited, and carried with its adoption that construction, and hence the decision of the court in this cause, in restricting the operation of the statute to injuries done to agricultural property or products, either real or personal, is in conflict with the statutes as construed, and holds for naught the evident intention of the legislative department of the State, which was to prevent injury to every kind of property.

3.   In construing Article 683, in this cause, this court has evidently overlooked Article 9 of the Penal Code, which furnishes the rule by which said article is to be construed, and which has been departed from in the decision of this cause.

## Argument for The State on Motion for Rehearing.

*J. D. Templeton* Attorney General, and *J. H. Burts,* Assistant Attorney General, for the motion:   We think that Article 683 of the Penal Code, construed as required by law, clearly makes the acts alleged in the information a crime, and punishes it mildly as such.   The said article as found in the Penal Code is as follows: "If any person shall wilfully and mischievously injure or destroy any growing fruit, corn, grain, or other agricultural product or property real or personal, of any description

what ever, in such manner as that the injury does not come within the description of any of the offenses against property otherwise provided for by this code, he shall be punished by fine not exceeding one thousand dollars."

In the matter of punctuation, I have copied that in the Code, but to show how little attention ought to be given punctuation in construing the article, I will state that in the Code the punctuation is different from that in the bill presented by the codifiers to the Sixteenth Legislature. In it there is a comma after the word "property" where it first occurs in the article. And again Article 683 is Article 716 of the Penal Code, according to the numbering of its articles as found in Oldham and White's Digest, and in the Texas Codes. In Oldham and White, and in the Texas Codes, a comma occurs after the word "product," which I venture to assert is the proper punctuation. The Texas Codes were published by or under the supervision of one who had much to do with their authorship.

This grammar of the section favors the construction put upon the article by the prosecution.

We find the utter disregard that is paid, however, to punctuation, and the liberties taken by the courts with it, strongly illustrated in Albright v. Payne, 21 Central Law Journal, 298. There a statute provided that "a person finding an animal at large, contrary to the provision of this chapter, may, and any constable shall, take up and confine the same forthwith, giving notice thereof to the owner." But the court so disregarded the punctuation as to place the comma before the word "forthwith," which, it is obvious, wrought a revolution in the meaning of the language, so far as punctuation could do it.

The action of the court there is consistent with our own law, Article 3139, Revised Statutes, wherein it is provided that "in no case shall the punctuation of a law control or affect the intention of the Legislature in the enactment thereof." And this section, though in the civil statutes, applies as well to the interpretation of the penal laws of the State. (Article 9, Penal Code.) So much for the matter of the punctuation.

We insist that the proper reading of the article, supplying all implied words, is as follows: "If any person shall wilfully and mischievously injure or destroy any growing fruit, corn, grain, or other *like* agricultural products, or *if any person shall wilfully and mischievously injure or destroy any* real or personal property of any description whatever in such manner as that

the injury does not come within the description of any of the offenses against property otherwise provided for by this code, he shall be punished by fine not exceeding one thousand dollars." The implied words being italicised, and to simplify the section we have transposed—which is expressly authorized by Article 3139, Revised Statutes—the descriptive words "real and personal" *following* the word "property" in the article as printed in the code.

To say "agricultural real property" and "agricultural personal property" is—to say the least of it—to use a very awkward, cumbrous, and unusual form of expression.

The theory of the prosecution is that the adjective "agricultural" applies only to the word "product." The words "agricultural product" is the ordinary, every day language of our people, but it is submitted that "agricultural real property" and "agricultural personal property" is not. And it is not only a reasonable rule, but it is the statutory rule that the laws are to be in, and are to be construed according to the ordinary language of the people. (Article 3138, Rev. Stat.) As illustrating this, see Franks v. Chapman, 61 Texas, 581.

It aids very much, in reaching a clear understanding of the law, to look into its history and origin, and to examine it in connection with other laws, and this will be done here before indulging in further verbal criticism of the article. The beginning or germ of the Penal Code, and of course of this Article, is the Act of March 20, 1848 (Chapter 152, Laws of 1848, pp. 219, 232), it being "An Act concerning crimes and punishments." An examination of the Act in the session laws will show that it was an attempt to provide for all the different species of offenses, and appropriate sub-titles are found throughout the Act, supplied by the Legislature. One of these sub-titles is as follows: "Offenses against property." It goes without saying that the offense here falls within that class.

In the Texas Codes we find Title 20 to treat "of offenses against property other than slaves." The offenses affecting slave property had been treated of under Title 19.

The significance of all this is the manifest intention of the Legislature to provide for the punishment of all offenses affecting property. In the Act of 1848, *supra*, and the codes of 1856, this is perfectly apparent. If, then, the act committed by the defendant here is not included, it is an accidental omission. It is worthy of some notice that in the Texas Codes and in Oldham

and White's Digest this section 683 (716 of the Codes and O. and
W.) is the last of a number of articles relating to offenses con-
cerning property, inspired by a malicious or mischievous intent
as distinguished from a motive of gain or profit.   Many other
specific acts had been enumerated, railroads not being forgotten.
(Art. 711, Texas Codes; Art. 678, Penal Code.)   And after all this
comes the language of the latter part of section 683, "in such
manner as that the injury does not come within the description
of any of the offenses against property otherwise provided for by
this code."   All the words descriptive of or qualifying property
according to any reading are dropped off.   "Agricultural,"
"real," "personal," all are dismissed, and it is in effect said that
the wilful and mischievous injury or destruction of "property"
shall be punished by a fine not exceeding one thousand dollars,
unless the property has been enumerated elsewhere and the
punishment for injury thereto provided for.   Unless I am right
in this, what meaning can the court give to the words "in such
manner as that the injury does not come within the description
of any of the offenses against property otherwise provided for by
this code?"   In the preceding sections the law makers had
noticed and provided punishments for a great number of offenses
against the different kinds of property, and these general words
were inserted out of caution to reach such as might not have
been mentioned.   And the act here is one which has not been
mentioned, and the "injury does not come within the description
of any of the offenses against property otherwise provided for by
the code."

What limiting or qualifying word will you apply to "prop-
erty" where it last occurs?   No reading of the article can make
"agricultural" apply to it.

The word "property" includes both real and personal property,
and one or the other includes agricultural property.   (Rev.
Stat., Art. 3160.)

Counsel for the appellant, in their interpretation of the article,
apply the rule that when enumerated or specific things are fol-
lowed by more general language, that that general language is
limited to things of the same class to which the enumerated
things belong.   I believe it would be a true statement that this
rule *noscitur a sociis* is applied more often to criminal and penal
laws, and that it more properly belongs to a time when such laws
were strictly construed, which time is obsolete in Texas.   The
same rule now applies to the construction of civil, penal, and

criminal laws. (Penal Code, Art. 9, sec. 3, final title.) But I am not going to fall out with it as a rule. It is believed that full force and a correct application is given to it when we imply and supply the word *like* before the word agricultural. Here is an enumeration of agricultural products, to-wit, "fruit," "corn," "grain," and under the rule the defendant might perhaps, plausibly at least, insist that when indicted for destruction of agricultural products, they should be like and of the same general class as those enumerated. Limited as above the rule has its proper force; to go further with it is to violently wrench the common understanding of the language.

I have endeavored to demonstrate that certain sections and chapters of the criminal laws intended to punish all crimes against property. And in commenting on the rule invoked by appellants, Bishop on Statutory Crimes, section 246, says its object is to ascertain and carry out the intention of the Legislature. And it is intimated in the same section that it is more an English than an American rule of construction as applied to criminal law, and it is said that general words, notwithstanding the rule, will be granted their full meaning to effectuate the legislative intent.

Two or three well considered cases may illustrate the limits and the application of this rule. In Woodworth v. Ohio, 26 Ohio State, 196, the statute provided "that if any person shall abuse any judge or justice of the peace, resist or abuse any sheriff, constable, or other officer, in the execution of his office, the person so offending," etc. Under this statute the defendant was indicted for resisting a supervisor of a township road district. He insisted on the application of this rule to the construction of the statute. The court denied its application and commented on it, saying: "It (the rule) can be used only as an aid in ascertaining the legislative intent and not for the purpose of confining the operation of a statute within limits narrower than those intended by the law maker. It offers a mere suggestion to the judicial mind that, where it clearly appears that the law maker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace those not within the class. The suggestion is one of common sense. Other rules of construction, however, are equally potent, especially the primary rule which suggests that the intention of the Legislature is to be found in the ordinary meaning of the words of the statute. Another well established

principle is, that even the rule requiring the strict construction of a penal statute, as against the prisoner, is not violated by giving every word of the statute its full meaning, unless restrained by the context." Let it be noticed here that the rule requiring a strict construction of penal laws was in force in Ohio at the date of this decision.

A stronger case, illustrating the true limits of the rule, is Foster v. Blount, 18 Alabama, 687. And here, too, it was said that penal laws were to be strictly construed. In Commonwealth v. Wyman, 8 Metcalf, 247, it was provided by the laws that "if any cashier, or other officer" etc., "shall embezzle," etc.

The president and a director were indicted for embezzlement, under the statute, and they insisted on this same rule of enumeration in their defense, but the court overruled it. It was said (p. 252) "the word officer here used is *ex vi termini* sufficient to, and does, by necessary implication, include the president and directors." And so we insist here, that the general word "property" occurring in Article 683, without any qualifying words, does *ex vi termini* include a railroad locomotive. And so we say of the words "real or personal property." See also State v. Williams, 2 Strob., 474, for a pretty extended discussion of this rule. I refer also to The State v. Cooper, 5 Day (Conn.), 254.

That the Legislature has seen proper to enact Article 683*a*, (p. 17, chap. 24, laws 1881) in regard to the time honored pastime of "baggage smashing" does not weaken the case for the prosecution under Article 683 of the Code. The mere reckless, or careless breaking, injuring, or destroying of the baggage, without more, could not be punished under Article 683. And Article 683*a*, Act 1881, *supra*, was intended to punish the act, whether including the element of mischief or malice, or not, and what is said here might apply in a general way to Articles 684–5–6–7, 690, and 691, all of which have been enacted since the adoption of the original code, in 1856. These articles dispense with the presence of malice or mischief as constituents of the offense.

The State v. Marshall, 13 Texas, 55, relied on by appellants, was decided on the ground that dogs were not property, and has no application to this case.

But as has been said by the Assistant Attorney General, in his motion, this article was construed in Ritter v. The State, 33 Texas, and it is but reasonable to suppose that it was adopted in to our present code carrying with it that construction. It is to be noted that in the Ritter case the charge against the defendant

was that he "did wilfully and mischievously injure the real property, to-wit: the lands and premises constituting and composing the homestead of one Taylor Ball." There is no allegation, averment, or evidence that the property injured was an agricultural product or agricultural real property. This averment cannot be supplied by intendment—if it was necessary. Under the ruling of the court in this case, the indictment in that case would have been fatally defective. It must be evident that it was not understood by the court when it construed Article 683 in the Ritter case that it was limited to injuries done to agricultural property.

*Battle & Battle*, for the appellant, *contra* the motion.

WHITE, PRESIDING JUDGE. Omitting formal averments the information in this case charges that the defendants, James Murray and J. A. Anthony, "in the county of McLennan, in the State of Texas, on the eighth day of March, A. D. 1886, did then and there unlawfully, wilfully and mischievously injure and destroy the personal property of the Missouri Pacific Railway Company, a corporation duly incorporated, by then and there wilfully and maliciously putting out the fire in an engine, and by then and there letting out and wasting and destroying the water in said engine, the same being the property of the said Missouri Pacific Railway Company; and by then and there displacing the connections and the machinery of said engine; and by then and there disabling and injuring said engine in such a manner as to unfit it for use by said company and its agents; the same being then and there done by them, the said James Murray and J. A. Anthony, in such a manner as that the injury does not come within the description of any of the offenses against property otherwise provided for by the Penal Code of Texas; against the peace and dignity of the State."

The information in this case is based upon Article 683 of the Penal Code, which is in the words following: "If any person shall wilfully and mischievously injure or destroy any growing fruit, corn, grain, *or other agricultural product or property real or personal*," etc. The clause of the forgoing part of Article 683, is the portion upon which the information is based, and is italicised by the court to direct special attention to its phraseology.

The record presents a single question for determination:

Opinion of the court on motion for rehearing.

Does the information charge the offense contemplated in and described by the statute? This question was twice presented by the appellant's counsel, was passed upon, and was overruled by the court below; first, in a motion to quash, and, second, in a motion in arrest of judgment, both motions being grounded upon the proposition that the information charged no offense cognizable under the Penal Code of the State.

This is a case of first impression in the judicial history of the State, and one in which every fair intendment should be made in the protection of property rights, and in maintaining the supremacy of law and order. It is probable that the Legislature, in the framing and adoption of the Penal Code, did not foresee the necessity for providing against a crime against property rights then deemed impossible of perpetration here, though of occasional occurrence elsewhere. But, however great the wrong and injury, this court cannot establish a precedent for punishing crime not cognizable under the statute.

It is the opinion of the court that the section of the statute under which the information is drawn (Art. 683 of the Penal Code), does not cover the acts charged in the information, and that this article is restricted in its operation to injuries done to agricultural property or products, either real or personal.

For the errors complained of in the court below, in overruling the appellant's motion to quash, and in arrest of judgment, the judgment is reversed, and, because the information charged no offense, the prosecution is dismissed.

*Reversed and dismissed.*

Opinion delivered June 5, 1886.

[The foregoing opinion was delivered by the court on the fifth day of June, 1886. On the seventh day of the same month the Assistant Attorney General, on behalf of the State, filed a motion for rehearing, the substance of which, together with the arguments pro and con, is set forth in the statement of the case. The opinion of Presiding Judge White, for the majority of the court, overruling the motion and the dissenting opinion of Judge Hurt, follow in the order named.—Reporters.]

OPINION OF THE COURT ON MOTION FOR REHEARING.

WHITE, PRESIDING JUDGE. Appellants in this case were, on information, prosecuted, convicted, and fined one dollar, for

an offense popularly known and designated as "killing a railroad engine, or locomotive." At a former day of this term, their appeal coming on to be heard, we held that the information preferred against them charged no offense known to the laws of this State, and that, consequently, the judgment should not only be reversed, but that further prosecution under said information should be dismissed, because the same charged no offense against the law.

A motion has been made by the Assistant Attorney General, in which he is joined in person by the Attorney General, for a rehearing of the case; and the latter officer presents us with quite an elaborate printed argument, in which he endeavors to show that our decision of the matter was a misapprehension of the law, and a mistaken construction of the statute upon which the prosecution was predicated.

The statute, Article 683 of the Penal Code, is in the following words, viz: "If any person shall wilfully and mischievously injure or destroy any growing fruit, corn, grain, or other agricultural product or property, real or personal, of any description whatever, in such manner as that the injury does not come within the description of any of the offenses against property, otherwise provided for by this code, he shall be punished by fine not exceeding one thousand dollars."

It is contended that, under a fair and necessary construction of the language of this article, the acts charged against the appellants in the information herein come plainly and legitimately within the purview of its language. The first question discussed is as to the proper punctuation of the language used, and it is contended that the grammar of the section favors the construction put upon the article by the prosecution.

We deem the question of punctuation wholly immaterial, and we wish it distinctly understood that the matter of punctuation never entered, in the most remote degree, into the discussion and decision of the case, as shown by our previous opinion. On the contrary, we recognize to its fullest extent the rule, which, though embraced in the civil statutes, is, in our opinion, equally as applicable, and of binding force in criminal prosecutions, to the effect that "grammatical errors shall not vitiate a law, and a transposition of words and clauses may be resorted to when the sentence or clause is without meaning as it stands, and in no case shall the punctuation of a law control or affect the intention of the Legislature in the enactment." (Art. 3139, Rev. Stat.)

In Shridley v. The State, 23 Ohio State, 130, it was held that punctuation may always be disregarded or made to conform to the clear meaning and intention of the statute.  So, in Randolph v. Bayne, 44 California, 366, it was held that courts will not permit an erroneous punctuation of the statute, in printing it, to have the effect of giving it an absurd construction.  Independent of our statutes, these rules are now of almost universal application in matters of statutory construction.

Discarding, then, from consideration all rules regarding punctuation or grammar, we come down to the plain question as to the proper construction which should be placed *upon the language* used in said article; and, in order the better to be enabled to do this, it becomes necessary to resort to those plain and well established rules which have been adopted and settled by long usage as the best guides by which the courts should be governed in their judicial action on such questions.

The leading and controlling rule in the construction of statutes, in fact the primary and fundamental one, is to interpret them according to their true meaning and intent.  To ascertain this intent it is the duty of the court to find, by other established rules, what was the fair. natural, and probable intent of the Legislature.  For this purpose the language employed in the act is first to be resorted to.  If the words employed are free from ambiguity and doubt, and express plainly, clearly, and distinctly, the intent, according to the most natural import of the language, there is no occasion to look elsewhere. (People v. Schoonmaker, 63 Barbour, N. Y., 47; citing McCluskey v. Cromwell, 11 N. Y., 601.)

Another good rule of construction is that, "when a particular class is spoken of, and general words follow, the class first mentioned is to be taken as the most comprehensive, and the general words treated as referring to matters *ejusdem generis* with such class." (Matter of Hermance et al., 71 N. Y., 487; citing Archb. of Canterbury's case, 2 Coke, 46*a*; Lyndon v. Stanbridge, 2 K. & N., 51; Reg. v. Edmundson, 2 E. & E., 83; Gibbs v. Lamen, 30 L. J., ch., 170; Broom's Legal Max., 625.)

Mr. Bishop says: "As stated by Hawkins, the doctrine is: 'No parallel case which comes within the same mischief shall be construed to be within the purview of it (the statute) unless it can be brought within the meaning of the words.'  In slightly different language, though a case of this sort is fully within the mischief to be remedied, and even of the same class, and within

the same reason as other cases enumerated in the statute, construction will not be permitted to bring it within the statute unless it is also within the statutory words." (Bish. on Stat. Crimes, 2 ed., sec. 220.)

We are aware that the rule of the common law which requires that penal statutes should be strictly construed, is abrogated in this State, and that there is now no distinction recognized with us in construing statutes, between those that are criminal or penal and those that are civil; but all are required to be construed alike liberally, with a view to carry out the intention of the Legislature. A general rule of construction is expressly provided in Article 9 of the Penal Code, which reads: "This code, and every other law upon the subject of crime which may be enacted, shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects, and no person shall be punished for an offense which is not made penal by the plain import of the words of a law." (Act of February 12, 1858, p. 56; Penal Code, Art. 9.)

That distinguished jurist and law writer, Mr. Dillon, in the case of The United States v. Clayton, discussing this subject, uses the following apt, pertinent, and forcible language. He says: "This is, as above observed, a question of legislative intention. Now, in what manner do the courts ascertain the legislative will? We answer that it is ascertained primarily and chiefly by the language the Legislature has used to express its meaning. We must suppose in the enactment of statutes, particularly statutes so important as the one under consideration, that Congress weighed well the words it employed. In the office of interpretation, courts, particularly in statutes that create crimes, must closely regard, and even cling to the language which the Legislature has selected to express its purpose. And when the words are not technical, or words of art, the presumption is a reasonable and strong one that they were used by the Legislature in their ordinary, popular, or general signification. Statutes enjoin obedience to their requirements, and, unless the contrary appears, it is to be taken that the Legistature did not use the words in which its commands are expressed in any unusual sense. For these reasons, whose cogency is obvious, the law is settled that, in construing statutes, the language used is never to be lost sight of, and the presumption is that the lan-

guage is used in no extraordinary sense, but in its common, every day meaning.   When courts, in construing statues, depart from the language employed by the legislator, they incur the risk of mistaking the legislative will, or declaring it to exist where, in truth, it has never had an expression.   The legitimate function of courts is to INTERPRET the legislative will, not to supplement it, or to supply it.   The judiciary must limit themselves to expounding the law; they can not make it.   It belongs only to the legislative department to create crimes and ordain punishments.   Accordingly courts, in the construction of statutable offenses, have always regarded it as their plain duty cautiously to keep clearly within the expressed will of the Legislature, lest otherwise they shall hold an act or an omission to be a crime, and punish it, when in fact the Legislature had never so intended it.   'If this rule is violated,' says Chief Justice Best, 'the fate of the accused person is decided by the arbitrary discretion of the judges, and not by the express authority of the laws.'   The principle that the legislative intent is to be found if possible in the enactment itself, and that the statutes are not to be extended by construction to cases not fairly and clearly embraced in their terms, is one of great importance to the citizen. The courts have no power to create offenses, but if, by a latitudinarian construction, they construe cases not provided for to be within the legislative enactments, it is manifest that the safety and liberty of the citizen are put in peril, and that the legislative domain has been invaded.   Of course, an enactment is not to be frittered away by forced constructions, by metaphysical niceties, or mere verbal and sharp criticism; never the less the doctrine is fundamental in English and American law, that there can be no constructive offenses; that before a man can be punished, his case must be plainly and unmistakably within the statute, *and if there be any fair doubt whether the statute embraces it, that doubt is to be resolved in favor of the accused.* These principles of law admit of no dispute, and have been often declared by the highest courts, and by no tribunal more clearly than the Supreme Court of the United States."   (Citing The United States v. Morris, 14 Pet., 464; The United States v. Wiltberger, 5 Wheat., 76; The United States v. Sheldon, 2 Id., 119. And see also Ferrett v. Atwill, 1 Blatch., 156; Sedgw. Const. and Stat. Laws, 324, 326, 334; 1 Bish. Cr. Law, sections 134, 145; The United States v. Clayton, 2 Dill., 344; S. C. Meyer's Fed. Dec., Vol. 12, sections 345, 346.)

Applying these principles and rules to the proper construction of Article 683 of the Penal Code, we are of opinion that the language as therein used is plain, simple, and unambiguous, and shows, in itself, what was the evident intent and object of the Legislature in the passage of the provision, and that it admits of but one interpretation, which is that the Legislature intended to protect from injury, where not otherwise provided for by the code, "any growing fruit, corn, grain, or other agricultural product or property. real or personal, of any dscription whatever." The subject matter of legislation was to provide the punishment for destroying agricultural products or property, real or personal. This and nothing more. To make it embrace other than agricultural products or property, real or personal, is to go outside of the plain and legitimate terms of the language used. No fair construction of its words will make it embrace any other kind of property, either in the spirit or letter of the statute. "Where a statute is drafted in clear and unambiguous language, and the literal meaning of the language leads to no absurd result, and is not repugnant to other parts of the statute, or to the other acts *in pari materia*, such literal meaning should be accorded to the act in its exposition." (Water Commissioners v. Brewster, 13 N. J., 125.)

Our learned Attorney General, in his printed argument, says: "We insist that the proper reading of the article, *supplying all* implied *words*, is as follows: 'If any person shall wilfully and mischievously injure or destroy any growing fruit, corn, grain, or other *like* agricultural products, *or if any person shall wilfully and mischievously injure or destroy any real or personal* property, of any description whatever, in such manner as that the injury does not come within the description of any of the offenses against property otherwise provided for by this code, he shall be punished by fine not exceeding one thousand dollars.' The implied words being italicised, and to simplify the section, we have transposed—which is expressly authorized by Article 3139 of the Revised Statutes—the descriptive words 'real and personal,' *following* the word 'property' in the article as printed in the code."

This argument is clearly *a petitio principii*—a very begging of the question at issue. Of course if the Attorney General, or this court, or any other court, is allowed to go outside of the language of the statute and supply words to meet an arbitrary construction, which the words used by the Legislature do not

warrant, then there are but few, if any statutes, which could not be strained to cover any imaginable offense, and the citizen could be punished for pretended, or supposed offenses, which are not made penal by the plain import of the words of any law found in the written code. Such mode of construction is expressly inhibited by the code. (Penal Code, Art. 9.)

We do not hesitate to concede that the proposed statute of the Attorney General would be amply sufficient to cover the acts charged as offenses in this prosecution. But his *supposed unwritten law* is, unfortunately for his argument, not an act of the Legislature, and consequently is not binding upon either the citizens or the courts of the State.

" Whilst a statute is not to be followed according to its literal terms, if it can be discovered that such was not the intention, yet the meaning must be ascertained by a reasonable construction to be given to the provisions of the act, and not one founded on mere arbitrary conjecture. No man incurs a penalty unless the Act which subjected him to it is clearly both within the spirit and letter of the statute. Things which do not come within the words are not to be brought within them by construction; the law does not allow of constructive offenses, or of arbitrary punishments. Statutes should be interpreted according to the most natural and obvious intent of their language, without resort to subtle or forced construction, for the purpose of either limiting or extending their operation. It is only in case where the meaning of a statute is doubtful that the courts are authorized to indulge in conjecture as to the intention of the Legislature, or to look to consequences in the construction of the law. Where the meaning is plain the *act* must be carried into effect according to its language, or the courts would be assuming legislative authority." (Cearfoss v. The State, 42 Md., 404.)

In Frye et al. v. Chicago, Burlington and Quincy Railroad Company, 73 Illinois, 402, 403, it is said: " Where the object of the Legislature is plain, and the words of the statute unequivocal, courts ought to adopt such a construction as will best effectuate the intention of the Legislature, but they must not, even in order to give effect to what they may *suppose* to be the intention of the Legislature, put upon the provisions of a statute a construction not supported by the *words*, even though the consequences should be to defeat the object. The fittest course in all cases where the intention of the Legislature is brought in question is to adhere to the *words* of the statute, construing them

according to their nature and import, in the order in which they stand in the act, rather than to enter upon an inquiry as to the *supposed* intention." (Dwarris on Stats., 702; Smith's Com., 830, secs. 714, 715.)

There was a time in the history of this State when we had a provision of law in force which would directly have covered the acts claimed and charged in this information as a penal offense, and it is found in Article 560, Hartley's Digest, in these words: "That if any person shall wilfully and maliciously kill, maim, beat, or wound, any horse, cattle, goat, sheep, or swine, or shall wilfully injure or destroy any other property of another, he shall be punished by fine, not exceeding one hundred dollars, or by imprisonment in the county jail not exceeding ninety days, or by both of said punishments." But this statute was never carried forward in to or retained as part of our law in the Penal Code, adopted in 1856, and since the adoption of said latter code we have had no similar statute in this State. Our law declares that "no person shall be punished for any act or omission unless the same is made a penal offense and a penalty is affixed thereto by the written law of this State." (Penal Code, Art. 3.)

At common law, such acts as here complained of were punished by damages recovered in a civil action, and, as offenses, were unknown to the penal law. Our own Legislature, by act approved March 5, 1881, amended the Penal Code by adding thereto, immediately following the article which we have been discussing, another article numbered 683a, making it an offense punishable by fine for any one of the parties named maliciously, carelessly or recklessly to destroy baggage. (Gen. Laws Seventeenth Leg., p. 17.) Evidently. if the construction of the Attorney General upon Article 683 be correct, then the Legislature, in the passage of said act, was engaged in a work of supererrogation, since baggage smashing could have been punished under Article 683, equally as well as killing locomotive engines. But the Legislature did not seem to think that Article 683 covered that offense, and we agree in opinion with the Legislature.

Our attention has been called by the Attorney General to the case of Ritter v. The State, 33 Texas, 608, where the appellant was charged, under Article 683, with malicious mischief, by tearing down and removing a house. The indictment in that case was for malicious mischief to real estate by the removal of a house therefrom, and, we think, came precisely within the terms of the statute, in that the house was a part of the realty, and

doubtless essential to its beneficial use and enjoyment for agricultural purposes, and was agricultural real property. There is only one other case in which Article 683 has been before this court in a prosecution similar to the one under consideration, to-wit: the case of Rose v. The State, 19 Texas Court of Appeals, 470. In that case the question here presented was not raised, and the judgment in the case was reversed for insufficiency of evidence and because there was no complaint shown in the record on appeal.

In conclusion, we are constrained to say that the argument of the Attorney General on the motion for rehearing in this case, has but tended to convince us the more strongly of the correctness of our decision heretofore rendered; and because said judgment is correct, the motion for rehearing is hereby overruled.

*Motion overruled.*

## DISSENTING OPINION OF HURT, J.

HURT, JUDGE. I regret that I can not agree with a majority of the court in this case.

In the opinion on the motion, our presiding judge gives a number of rules by which the court should be governed in construing statutes. To those rules I have not the slightest objection. They are correct, and by them this court should be controlled. Neither this court nor any other court has the right to make laws, or to so construe a statute as to make acts and omissions offenses which are not so declared to be by the law making power. On the other hand, it is the duty of all courts to enforce the will of the Legislature,—to execute the law as it is written.

After stating the rules of construction, my brother White makes the conclusion that Article 683 of the Penal Code simply provides a punishment for injuring or destroying property, either real or personal, which is an *agricultural product*, or agricultural property, and that, unless the property be a product of agriculture or agricultural property, it does not come within the provisions of Article 683: that an engine is not an agricultural product or property, and hence an injury to or a destruction of an engine is not made penal by said article.

As above stated, this court must enforce the will,—the intention,—of the law making power. What, therefore, is the intention of the Legislature as expressed in Article 683? What is the subject? Is it *merely* to provide a punishment for injuring

or destroying agricultural products or agricultural property?
Let us examine this article briefly. To present this question in
a plain and simple manner, I will divide the sentence into three
clauses.

First clause: "If any person shall wilfully and mischievously
injure or destroy any growing fruit, corn, grain, or other agricul-
tural product." Now, it will be seen from a casual inspection of
this clause that all property, either real or personal, if it be an
*agricultural product*, is embraced therein. This is evident, and
hence beyond the range of argument.

Second clause: "Or property real or personal of any descrip-
tion whatever." Here we have the disjunctive "or." Agricul-
tural products are passed—left behind. Other property is to be
protected. What property? Evidently beyond the pale of con-
struction, "property real or personal,"—*all property "of any
description whatever."* Language can not be more comprehen-
sive. The mind can not conceive of a species of property which
would not be embraced in the words used. Construction has no
work to perform here, for the intention of the Legislature is
patent.

But it is contended that the Article under consideration em-
braces not only agricultural products, but also agricultural *prop-
erty*. I know of no such property as agricultural property. No
court could define such property.

Third clause: "In such manner as that the injury does not
come within the description of any of the offenses against *prop-
erty* otherwise provided for by this code." That the injury does
not come within the description of any of the offenses *against
property*. What character of property? Agricultural products
or agricultural property? By no means, but all manner of prop-
erty, either real or personal.

Now, to me it is clear and certain that the Legislature intended
to punish the destruction of or injury to all character of prop-
erty, both real and personal, and that where the punishment was
not otherwise provided for by the code, it, the punishment,
should be such as not to exceed one thousand dollars.

This Article (683) is sweeping in its provisions. It throws
around all property "of any description whatever," the strong
protecting arm of the law. It says to the ruthless and mis-
chievous trespasser: "Stand back! hands off, or suffer the pen-
alties!" Its provisions are proper and just; for upon what rea-

son should one species of property be protected and not all? No good reason can be found.

I feel that nothing further can be added by me which would strengthen the above observations. I am of the opinion that a rehearing should be granted, and upon the merits the judgment should be affirmed.

*Motion overruled.*

Opinion delivered June 23, 1886.