Rudy Valentino CUELLAR, Appellant,

v.

The STATE of Texas.

No. 0733–01.

Court of Criminal Appeals of Texas.

Feb. 13, 2002.

**816**

Richard E. Langlois, San Antonio, for Appellant.

Jeffrey L. Van Horn, Asst. State's Atty., Matthew Paul, State's Atty., Austin, for State.

## OPINION

HOLCOMB, J., delivered the opinion of the Court, in which MEYERS, PRICE, JOHNSON, and COCHRAN, JJ., joined.

Texas Penal Code § 46.04(a) makes it an offense for a convicted felon to possess a firearm.[1] The Fourth Court of Appeals held that a felony conviction set aside pur-

suant to Article 42.12, § 20, of the Texas Code of Criminal Procedure is not a felony conviction for purposes of Penal Code § 46.04(a). *Cuellar v. State*, 40 S.W.3d 724, 728 (Tex.App.-San Antonio 2001). The issue in this case is whether the Fourth Court erred. We hold that it did not.

### Relevant Facts

On July 26, 1976, appellant, Rudy Valentino Cuellar, pled guilty to the felony offense of possession of heroin. *See* Tex. Health & Safety Code § 481.115(d). The trial court sentenced appellant to five years imprisonment, suspended the imposition of the sentence, and then placed appellant on community supervision for five years. On September 1, 1981, the trial court, after finding that appellant satisfactorily fulfilled the conditions of community supervision, entered the following order:

> It is the order of the court that the *judgement of conviction* entered in said cause be and is hereby *set aside* and the *indictment* against said defendant be and the same is hereby *dismissed*. . (Emphasis added.)

On November 6, 1996, appellant, en route to his hunting lease, was a passenger in a vehicle pulled over for a routine traffic violation. The officer asked the driver and appellant whether they possessed any weapons. Appellant informed the officer that he had a hunting rifle behind the seat. The officer then obtained appellant's li-

---

1. Texas Penal Code § 46.04(a) provides:
   (a) A person who has been convicted of a felony commits an offense if he possesses a firearm:
   (1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or

the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or
   (2) after the period described by Subdivision (1), at any location other than the premises at which the person lives.

cense, processed the license to check for prior criminal history and outstanding warrants, and learned of the 1976 conviction. Appellant was subsequently arrested and indicted for the offense of unlawful possession of a firearm by a felon.

On February 23, 1999, appellant, after an unsuccessful motion to quash,[2] pled not guilty. The trial court found appellant guilty, sentenced him to two years imprisonment, suspended the imposition of the sentence, and placed him on community supervision for two years.

On appeal, appellant argued that the evidence presented at his trial was legally insufficient to support his conviction. Specifically, appellant argued that § 46.04(a) requires a felony conviction as an element of the offense and, since his 1976 conviction was set aside pursuant to Article 42.12, § 20, there was no underlying felony conviction to support a conviction under § 46.04(a). The Fourth Court of Appeals agreed with appellant and reversed the judgment of the trial court. The Court of Appeals reasoned that "[t]he law is straight-forward, and the Article 42.12

§ 20 order should have been sufficient to shield [appellant] from any criminal charges stemming from the nullified 1976 conviction." *Cuellar*, 40 S.W.3d at 728. We granted the State's petition for discretionary review to determine whether the Court of Appeals erred. *See* Tex.R.App. Proc. 66.3(b).

In its brief to this Court, the State argues that an individual placed on felony community supervision has a felony conviction for purposes of § 46.04(a), even if the trial court later issues an order dismissing the indictment and releasing the defendant from all penalties and disabilities resulting from the offense. The State reasons that: (1) every person placed on community supervision pursuant to Article 42.12, § 20, is considered to be convicted and such a conviction cannot be set aside; (2) not every penalty or disability is removed by an Article 42.12, § 20, order; and (3) "strong public policy" and concerns for public safety mandate that a person with a felony conviction should not be allowed to possess a firearm.[3]

*Analysis*

Article 42.12, § 20(a), provides that:

2. The former version of § 46.04, amended in 1993, provided that "[a] person who has been convicted of a felony involving *an act of violence or threatened violence* to a person or property commits an offense if he possesses a firearm away from the premises where he lives." (Emphasis added.) In his motion to quash, appellant argued that the indictment failed to allege that his 1976 conviction involved an act of violence. The Court of Appeals affirmed the trial court's decision to grant his motion. *See State v. Cuellar*, No. 07 97–0288–CR, 1998 WL 387288 (Tex.App.-Amarillo, July 13, 1998) (not designated for publication). This Court, however, reversed the Court of Appeals and remanded the case to the trial court. *State v. Cuellar*, No.1327–98 (Tex.Crim.App.-Nov.25, 1998) (not designated for publication).

3. Clearly, the State of Texas has an interest in protecting its citizens from convicted felons.

The State in its brief, however, fails to recognize that persons whose convictions are set aside pursuant to Article 42.12, § 20, do not implicate these concerns for public safety. The underlying purpose of community supervision is to provide criminal defendants with a chance to "mend their ways." If a defendant, like appellant, accepts the challenge and successfully completes the terms and conditions of community supervision, he should not be stigmatized for the rest of his life. Such persons have demonstrated that they are ready to rejoin the community as law-abiding citizens. *See discussion infra.* Accordingly, we have recognized that, once the conviction is set aside, persons previously convicted of felonies can serve on juries and vote in elections. *See Walker v. State*, 645 S.W.2d 294, 295 (Tex.Crim.App.1983); *Hoffman v. State*, 922 S.W.2d 663, 669 (Tex.App.-Waco 1996, pet. ref'd); Op. Tex. Att'y Gen. No. JC–0396 (2001). If the State of Texas allows appellant

At any time, after the defendant has satisfactorily completed one-third of the original community supervision period or two years of community supervision, whichever is less, the period of community supervision may be reduced or terminated by the judge. Upon the satisfactory fulfillment of the conditions of community supervision, and the expiration of the period of community supervision, the judge, by order duly entered, shall amend or modify the original sentence imposed, if necessary, to conform to the community supervision period and shall discharge the defendant. If the judge discharges the defendant under this section, the judge may set aside the verdict or permit the defendant to withdraw his plea, and shall dismiss the accusation, complaint, information or indictment against the defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted or to which he has pleaded guilty, except that:

> (1) proof of the conviction or plea of guilty shall be made known to the judge should the defendant again be convicted of any criminal offense; and

> (2) if the defendant is an applicant for a license or is a licensee under Chapter 42, Human Resources Code, the Texas Department of Human Services may consider the fact that the defendant previously has received community supervision under this article in issuing, renewing, denying, or revoking a license under that chapter.

The State argues that the language of Article 42.12, § 20, does not authorize a judge to set aside a defendant's conviction. The State fails, however, to clearly distinguish that there are two entirely different types of "discharge" from felony community supervision under Article 42.12, § 20.

■ First, there is the usual method of discharge. When a person placed on community supervision has completed his entire term of community supervision and has satisfactorily fulfilled all of the conditions of community supervision, the trial judge *shall* discharge the defendant from community supervision. In addition, although he need not do so, the judge *may* discharge the person early if the "defendant has satisfactorily completed one-third of the original community supervision period or two years of community supervision, whichever is less ...." Tex.Code Crim. Proc. art. 42.12, § 20(a). But a person who has fulfilled all of the conditions of community supervision must be discharged. That person has paid his debt to society and, in effect, "graduates" from community supervision. However, that person has been convicted of a felony, even though he never went to prison and, for some purposes, it is not a "final" felony conviction. *See Ex parte Murchison,* 560 S.W.2d 654 (Tex.Crim.App.1978) ("a conviction is not final for enhancement purposes where the imposition of sentence has been suspended and probation granted"); *Ex parte Langley,* 833 S.W.2d 141 (Tex. Crim.App.1992) (same). The vast majority of felony probation sentences are completed in this manner.

■ There is, however, a second, less common type of discharge under Article 42.12, § 20. This second type of discharge

---

to sit on a jury in, for example, a capital murder case, it would be difficult to understand why the State would not allow him to own or possess a hunting rifle like other Texas citizens who vote and sit on juries.

is not a right but rather is a matter of "judicial clemency" within the trial court's sole discretion. *See Wolfe v. State*, 917 S.W.2d 270 (Tex.Crim.App.1996) ("[Section] 20 provides a mechanism to release a convicted person of all legal disabilities upon successful completion of probation."); *Hoffman v. State*, 922 S.W.2d 663, 668 (Tex.App.-Waco 1996, pet. ref'd) ("Among the district court's several powers is the authority to dismiss an indictment or information against a convicted felon once he has successfully completed the terms of his probation."). That is, when a trial judge believes that a person on community supervision is completely rehabilitated and is ready to re-take his place as a law-abiding member of society, the trial judge *may* "set aside the verdict or permit the defendant to withdraw his plea, and shall dismiss the accusation, complaint, information

or indictment against the defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted or to which he has pleaded guilty."[4] Tex.Code Crim. Proc. 42.12, § 20(a);[5] *State v. Jimenez*, 987 S.W.2d 886, 888 n. 2 (Tex.Crim.App.1999) ("Under Texas law, successful completion of probation allows the judge to dismiss some charges without a final conviction."). These words are crystal clear. There is no doubt as to their meaning. *See Boykin v. State*, 818 S.W.2d 782 (Tex.Crim.App.1991).[6] If a judge chooses to exercise this judicial clemency provision, the conviction is wiped away, the indictment dismissed, and the person is free to walk away from the courtroom "released from all penalties and disabilities" resulting from the conviction. Art. 42.12, § 20(a).

---

**4.** The dissent's interpretation of this sentence is incorrect. Dismissing the charging instrument is not always mandatory. Subsection 20 provides that "the judge may set aside the verdict or permit the defendant to withdraw his plea, and shall dismiss the accusation, complaint, information, or indictment...." Thus, *if* the judge exercises his discretion and chooses to set aside the verdict or permits the defendant to withdraw his plea, then and only then *must* the judge dismiss the charging instrument.

**5.** "This section does not apply to a defendant convicted of an offense under Sections 49.04–49.08, Penal Code, a defendant convicted of an offense for which on conviction registration as a sex offender is required under Chapter 62, as added by Chapter 668, Acts of the 75th Legislature, Regular Session, 1997, or a defendant convicted of an offense punishable as a state jail felony." *Id.* at subsection (b).

**6.** The dissent would "find that the effect of § 20 on § 46.04 is ambiguous." This is precisely where the dissent runs astray. *Boykin* provides that "[w]here the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from

such a statute." *Id.* at 785. (Some punctuation omitted.) We further explained "[i]f the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, *then and only then*, out of absolute necessity, is it constitutionally permissible for a court to consider ... extratextual factors." *Id.* (Emphasis added.) Here, the language of Article 42.12, § 20 is clear and unambiguous. Thus, there is no need to consider extratextual factors. In considering such factors, the dissent ignores the plain meaning rule and disregards the teachings of *Boykin*.

Moreover, even if we suppose, as the dissent does, that the "effect of § 20 on § 46.04 is ambiguous," we would then agree with the concurrence that the rule of lenity would apply. The rule, as supplied by the U.S. Supreme Court, embodies "a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment." *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955). The rule of lenity is, in essence, another extratextual factor for a court to consider if, and only if, a statute is ambiguous.

■ Once the trial court judge signs the Article 42.12, § 20, order,[7] the felony conviction disappears, except as specifically noted in subsections (1) and (2). Under subsection (1), if the discharged person is subsequently convicted of another criminal offense, the previously dismissed "former" felony conviction will resurrect itself and be made known to the trial judge. *Id.* Under subsection (2), if the discharged person is applying for a license to run a child care facility or currently has such a license, the Texas Department of Human Services, in issuing, renewing, denying, or revoking such a license, may consider the fact that the person had previously received community supervision. *Id.* Both of these exceptions make good sense. They are, however, the only listed exceptions. The Legislature could add other exceptions if it so chooses. For example, it could add a provision stating that a person whose conviction is dismissed under Article 42.12, § 20, is still considered a felon for purposes of carrying an otherwise legal firearm.[8] However, in the absence of such an exception, the clear language of Article 42.12, § 20, governs.

In sum, a person who successfully completes all of the terms and conditions of community supervision must be discharged from community supervision. This is not a discretionary matter. However, whether to dismiss the indictment and set aside the conviction is wholly within the discretion of the trial court. But, a person whose conviction is set aside pursuant to an Article 42.12, § 20, order *is not a convicted felon.*

■ Penal Code § 46.04(a) requires a felony conviction as an element of the offense. Here, appellant's prior felony conviction was set aside pursuant to an Article 42.12, § 20, order. Accordingly, there was no predicate felony conviction to support a conviction under § 46.04(a). Therefore, the Court of Appeals did not err in reversing the judgment of the trial court.

We affirm the judgment of the Court of Appeals.

HERVEY, J., did not participate in the decision of the Court.

KELLER, P.J., filed a concurring opinion, in which WOMACK and JOHNSON, JJ., joined.

COCHRAN, J., filed a concurring opinion, in which MEYERS, J., joined.

KEASLER, J., filed a dissenting opinion.

---

7. The trial judge must enter an order releasing the defendant from the legal disabilities. In the absence of such an order, the disabilities are not removed. *Wolfe,* 917 S.W.2d at 277.

8.. *See e.g. Tune v. Texas Dep't of Pub. Safety,* 23 S.W.3d 358 (Tex.2000). There, the district court issued an Article 42.12, § 20, order setting aside Tune's conviction, dismissing his indictment, and discharging him from probation. Tune's subsequent application for a license to carry a concealed handgun was denied because of his prior "conviction." On appeal Tune argued, similar to the appellant in this case, that since his conviction was set aside he was no longer "convicted" for purposes of the Handgun Act. The Texas Su-

preme Court held that since the Handgun Act specifically defines "conviction" to include a person whose conviction was dismissed under Article 42.12, § 20, a person is "convicted" for purposes of the Handgun Act whether or not his sentence is subsequently probated and he is discharged from community supervision. The Court noted that "[i]f the Handgun Act didn't include a specific definition of the term 'convicted', then the inability to obtain a concealed-handgun license might be one of the penalties and disabilities removed when the district court dismissed Tune's indictment." *Id.* at 364. Section 46.04 of the Texas Penal Code does not include a definition of the term "conviction."

KELLER, P.J., filed a concurring opinion which WOMACK and JOHNSON, JJ., joined.

The Court says that the order discharging appellant from community supervision removed appellant's status as a convicted felon, and hence, removed the prohibition against possessing a firearm. The dissent says that appellant's status as a convicted felon remained intact, and thus, his possession of a firearm was a crime. Both sides of the issue advance reasonable justifications for their positions, based upon the language of the statutes and extratextual factors. And that is part of the problem.

A law proscribing a criminal offense must be clear enough to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited.[1] In this case, the law failed to do so. The order discharging appellant from probation purported to set aside the conviction and dismiss the indictment. The community supervision statute provides that, if the indictment is dismissed, the defendant is "released from *all* penalties and disabilities resulting from the offense" except for certain enumerated situations not present here.[2] Appellant should not be required to guess that statutory language releasing him from "all" disabilities does not really mean all disabilities. Nor should appellant be required to resort to legislative history to determine whether his conduct is criminal. Even if the dissent's interpretation of the relevant statutes is correct,

appellant should still obtain relief because these statutes are unconstitutionally vague as applied to appellant's conduct.

I concur in the Court's judgment.

COCHRAN, J., delivered a concurring opinion in which MEYERS, J., joined.

I join the majority opinion. I write this concurrence only to provide an additional reason that a person whose felony conviction has been set aside and the indictment against him dismissed is not prohibited from possessing a hunting rifle. In this situation, the Rule of Lenity requires this Court to adopt the less harsh interpretation of penal statutes.

I agree with the majority and the Attorney General of the State of Texas[1] that the words of article 42.12, § 20(a) are crystal clear and that they mean what they say. A person whose felony conviction has been set aside and whose indictment has been dismissed, who walks forth from the courtroom "released from all penalties and disabilities," may possess and use a firearm to the same extent as any other Texas citizen.

On the other hand, the dissent's interpretation is not unreasonable. It is *possible* to interpret art. 42.12, § 20(a) as removing some, but not all, legal disabilities attaching to a felony conviction that has been set aside regardless of the statute's plain language. However, it is a fundamental tenet of criminal jurisprudence

---

1. *Grayned v. Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

2. Tex.Code Crim. Proc., Art. 42.12 § 20(a)(emphasis added).

1. *See* Op. Tex. Att'y Gen. No. JC–0396 (2001) (concluding that "[b]ecause a defendant whose verdict is set aside or who is permitted

to withdraw a plea under article 42.12, section 20 is generally 'released from all penalties and disabilities resulting from the offense or crime of which he has been convicted or to which he has pleaded guilty,' ... a defendant whose guilty verdict has been set aside or who has been permitted to withdraw a plea is, like a pardoned felon, not subject to section 46.04 of the Penal Code'").

that, when courts must choose between two reasonable readings of a statute to determine what conduct the legislature intended to punish, courts apply the policy of lenity and adopt the less harsh meaning.[2]

Fortunately, Texas courts rarely need resort to the Rule of Lenity to construe its penal provisions. By and large, the Texas Legislature drafted the Texas Penal Code with clarity, precision, and straightforward, well-defined language.[3] But as early as 1886, recognizing the impossibility of achieving absolute linguistic perfection, the Texas Court of Appeals adopted the rule of lenity, stating:

> the doctrine is fundamental in English and American law that there can be no constructive offenses; that, before a man can be punished, his case must be plainly and unmistakably within the statute, *and, if there be any fair doubt whether the statute embraces it, that doubt is to be resolved in favor of the accused.*

*Murray v. State,* 21 Tex.App. 620, 633, 2 S.W. 757, 761 (1886) (emphasis in original).

**2.** BLACK'S LAW DICTIONARY 1196 (5th ed.1979) defines the Rule of Lenity as:

Where the intention of Congress is not clear from the act itself and reasonable minds might differ as to its intention, the court will adopt the less harsh meaning. *U.S. v. Callanan,* D.C. Mo., 173 F.Supp. 98, 100. Under "rule of lenity," when it is unclear whether a legislature intended multiple sentences for single act involving multiple victims, doubt will be resolved in favor of defendant. *Davenport v. State,* Alaska, 543 P.2d 1204, 1209.

**3.** The purpose of writing a penal code is to put all reasonable people on notice of precisely what conduct, under what circumstances, is subject to criminal liability and punishment.

**4.** *See, e.g., Kolender v. Lawson,* 461 U.S. 352, 357–58, 103 S.Ct. 1855, 75 L.Ed.2d 903

The United States Supreme Court has frequently stressed that a person is entitled to be informed of what the law commands or forbids.[4] A statute that is not sufficiently definite "to give a person of ordinary intelligence fair notice that his conduct is forbidden" therefore violates constitutional standards of due process of law.[5] When a penal statute is so ambiguous that its meaning is uncertain, or its application is broader than what reasonable persons would anticipate, the statute fails to provide adequate notice of its coverage, and that statute is therefore void.[6]

That "void-for-vagueness" doctrine does not apply to TEX. PENAL CODE § 46.04 (Unlawful Possession of Firearm by Felon) because that provision is unambiguous on its face regarding what conduct is prohibited (the possession of a firearm) and under what circumstances (when a person is a convicted felon). The potential ambiguity arises only when one attempts to define who "has been convicted of a felony" for purposes of that penal provision.

As the dissent aptly points out, the word "convicted" has several different meanings

(1983) (penal laws must give "fair warning" to "ordinary people"); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (vagrancy statute void for vagueness); *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939) (stating that "[n]o one may be required at peril of life, liberty, or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids").

**5.** *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

**6.** *See, e.g., Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Palmer v. City of Euclid, Ohio,* 402 U.S. 544, 545, 91 S.Ct. 1563, 29 L.Ed.2d 98 (1971); *Bouie v. Columbia,* 378 U.S. 347, 350–51, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

in Texas law, depending upon the particular statute and the particular situation. Usually, the legislature carefully defines what the term "convicted" means within a specific statute.[7] Just because the Legislature did not specifically define its term "convicted of a felony" for purposes of the "felon in possession of a firearm" law does not mean, however, that Texas courts may judicially create or import *any* reasonable definition of "convicted of a felony" into the statute. When the choice between two equally reasonable definitions of a word or phrase makes [8] the difference between perfectly lawful conduct and conduct which could be punished by up to ten years in prison, courts must adapt that reasonable definition which avoids the harsher result.[9]

---

7. For example, in the Concealed Handgun Act, the legislature defined "convicted" as an adjudication of guilt regardless "of whether or not the imposition of the sentence is subsequently probated and the person is discharged from community supervision." Tex. Gov't Code § 411.171(4) (Vernon Supp.2001). This statute is precise and clear in its definition of "conviction" for purposes of applying for a concealed handgun license. All reasonable persons applying for a permit are clearly on notice of who falls within or without the category of "convicted" felons.

Similarly, a person whose felony indictment has been dismissed and who has been "released from all penalties and disabilities result from the offense" is nonetheless disqualified from becoming a law enforcement or security officer because the Occupations Code expressly says so. Tex. Occ.Code § 1701.312(b)(1).

Similarly, a person whose felony indictment has been dismissed and who has been "released from all penalties and disabilities result from the offense" may be denied a licence as a speech pathologist or audiologist because the statute explicitly says so. Tex. Occ.Code § 1701.312(b)(1).

Obviously, the Texas Legislature knows how to define the word "conviction" to include those who have been released from all penalties and disabilities when it wishes to. The fact that it did not do so in defining the crime of "felon in possession of a firearm" statute is at least *some* evidence that it did not want to.

8. I cannot conclude that the dissent's definition of "convicted of a felony" for purposes of the "felon in possession" offense is as reasonable as that of the majority. However, if one could assume that the two *were* equally reasonable definitions under the circumstances as the major premise, then the minor premise, the rule of lenity, must apply.

The dissent expresses concern that I am unnecessarily invoking the rule of lenity without first using every other statutory construction aid to resolve the "ambiguity"of the term "felony conviction." True enough. I am placing the dissent's statutory construction argument in its best possible light, granting it every benefit of the doubt, and concluding that, *even if* we could find its interpretation of the term "convicted felon" was just as reasonable as the straightforward, plain-language construction of the majority, *then* the Rule of Lenity would apply. Of course, if one concludes that the dissent's interpretation and construction of the term is *not* as reasonable as that of the majority, then the Rule of Lenity need not be invoked because there are no equal and competing alternatives. The Rule of Lenity only applies when both alternative choices or definitions are more-or-less equally reasonable. In that situation, courts are required to choose the less harsh alternative.

9. In *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955), the government asked the Supreme Court to adopt one reasonable construction of the Mann Act which would permit multiple prosecutions for interstate transportation of "any woman or girl" for immoral purposes. The government's interpretation of the statutory phrase, written in the singular, would permit multiple prosecutions for the transporting of multiple women or girls across state lines at one time. The Court rejected this reasonable interpretation under the Rule of Lenity, stating:

It is not to be denied that argumentative skill, as shown at the Bar, could persuasively and not unreasonably reach either of the conflicting constructions. About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make

For example, in construing the federal "felon in possession of a firearm" statute, the United States Supreme Court applied the Rule of Lenity.[10] There, the possible ambiguity centered around the phrase "in commerce or affecting commerce." The statute could reasonably be read broadly to criminalize *all* possessions by a felon of any firearm that had itself been purchased in commerce.[11] Conversely, the statute could be read narrowly to criminalize firearm possession by a felon only when the government could prove a nexus between the felon's possession, use, or transport of the firearm and interstate commerce.[12] The Supreme Court chose the latter construction based on the Rule of Lenity, and stated:

> First, as we have recently reaffirmed, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity...." In various ways over the years, we have stated that "when choice has to be made between two readings of what Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite...." This principle is founded on two policies that have long been part of our tradition. First, "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make a warning fair, so far as possible the line should be

clear...." Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity. This policy embodies "instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." H. Friendly, *Mr. Justice Frankfurter and the Reading of Statutes,* in BENCHMARKS 196, 209 (1967). Thus, where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.[13]

In the present situation, Mr. Cuellar was arrested in 1976 for felony possession of heroin. He pled guilty and was placed on five years' probation. Then, on September 1, 1981, the trial judge found that Mr. Cuellar had satisfactorily fulfilled all the requirements of his probation and he entered the following order:

> It is the order of the court that the judgement [sic] of conviction entered in said cause be and hereby is set aside and the indictment against said defendant be and the same is hereby dismissed.

Stripped of its legal jargon, the trial court's order explicitly told Mr. Cuellar that the judgment of conviction had been erased, the indictment was dismissed, and that the felony conviction was "gone with the wind." He was once more the equal of

---

the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.

**10.** *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

**11.** *Id.* at 346.

**12.** *Id.*

**13.** *Id.* at 347–48 (citations omitted as indicated).

other Texas citizens.[14] Was Mr. Cuellar naive to believe the court's order meant what it said? Was the trial judge wrong in telling Mr. Cuellar he had been released from *all* legal penalties and disabilities when the conviction was set aside and the indictment dismissed? Even though the statute explicitly states "all," should the trial judge have improvised and said "some" to ensure that he did not mislead Mr. Cuellar to his detriment? Is this a legal "gotcha" in which judges follow the written words of the statute and tell a person one thing, that person reads and relies upon the explicit spoken or written words, only to wake up in jail one day and discover that the words he was told do not mean what reasonable people thought they meant? No. The Rule of Lenity is designed to avoid this difficult dilemma. It simultaneously saves a statute from being struck down as void for vagueness or overbreath and ensures that people who rely upon a reasonable interpretation of statutory language are not punished as criminals.

I can certainly agree with the public policy concerns expressed by the dissent that "[i]t is not absurd to allow Cueller to sit on a jury and vote but not own a gun." Dissenting Op. at 24.[15] If the Texas Legislature also agrees with this proposition, it can easily enact such a prohibition. But the dissent turns statutory construction on its head in concluding that "[i]f it is poor public policy to prevent a person in this category from going hunting, then that is for the Legislature to correct." Dissenting Op. at 24. But the Legislature has *not* explicitly prohibited those whose felony convictions have been set aside and whose indictments have been dismissed from possessing a firearm. We cannot judicially broaden a criminal offense and then tell the legislature that if it does not like our judicial enlargement, the legislature may fix it. Were we to do so, people who were explicitly told by the legislature and the trial judge that "all penalties and disabilities" had been removed when their felony indictment was set aside many years ago

**14.** Of course, article 42.12, § 20(a) does explicitly warn Mr. Cuellar and others similarly situated that there is still a small legal shadow hovering over their heads. As both the dissent and the Texas Attorney General have noted, the felony conviction "has not been *entirely* erased." *See* Dissenting Op. at 12 (quoting OP. TEX.ATT'Y GEN. No. M–640 (1970)). Thus, under subsection (a)(1) Mr. Cuellar is explicitly put on notice that "proof of the conviction or plea of guilty shall be made known to the judge shall the defendant again be convicted of any criminal offense." Under subsection (a)(b) he is explicitly told that if he applies for a license to operate a child care facility, the Texas Department of Human Resources may consider the prior probation in deciding whether to issue such a license. Both of these explicit statutory exceptions make good sense and good public policy. The legislature can add other exceptions if it so chooses. Indeed, it can add a provision stating that a person discharged under this section is nonetheless considered a "felon" for purposes of carrying an otherwise legal

hunting rifle or other firearm. But until and unless the legislature does so, we do not have the authority to judicially engraft such an exception onto the statute. We must apply the law as the legislature wrote it, not how we might wish it had been written.

**15.** Conversely, the Legislature may not think that it is absurd that a person whose drug-related felony judgment was set aside and whose felony indictment was dismissed some twenty years ago is entitled to go hunting on his own hunting lease with his own hunting rifle. I cannot conclude that application of the plain language of article 42.12, § 20(a) leads to any "absurd" result in this case. One does not invoke the Rule of Lenity to be "lenient to wrongdoers" as suggested by the dissent. Dissenting Op. At 25. The Rule of Lenity is invoked to ensure that those who conform their conduct to a reasonable interpretation of the law are not mislabeled as "wrongdoers."

must go to jail for possessing a hunting rifle. Fortunately, the Rule of Lenity protects us from such a situation.

With these additional comments, I join the majority opinion.

KEASLER, J., filed this dissenting opinion.

The issue in this case is whether Cuellar can be convicted of violating Penal Code § 46.04 when his underlying conviction was one in which he successfully completed his community supervision. I believe the answer is "yes."

The majority begins its analysis with Article 42.12, § 20, of the Code of Criminal Procedure, but the starting point should be § 46.04. We should interpret a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results that the Legislature could not possibly have intended.[1] In analyzing the language of a statute, we assume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible.[2] When the language is ambiguous, we may look to extratextual factors.[3] In such a case, we may consider, among other matters, the following: (1) the object sought to be attained, (2) circumstances under which the statute was enacted, (3) any legislative history, (4) common law or former statutory provisions, including laws on the same or similar subjects, (5) the consequences of a particular construction, (6) administrative construction of the statute, and (7) the title (caption), preamble, and emergency provision.[4]

In the event of an irreconcilable conflict between two statutes, the more specific provision prevails unless the general provision was enacted later and it is apparent that the general provision was intended to prevail.[5] If possible, we should interpret the applicable statutes so that effect may be given to each and avoid any interpretation that would render any parts of the statutes irreconcilable or meaningless.[6] We should strive to give effect to all the provisions to make them stand together and have concurrent efficacy.[7]

## I. § 46.04

### A. Plain language

Section 46.04 provides as follows:

(a) A person who has been convicted of a felony commits an offense if he possesses a firearm:

(1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or

---

1. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

2. *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim.App.1997).

3. *Boykin*, 818 S.W.2d at 785–86.

4. Tex. Gov't Code Ann. § 311.023 (Vernon 1998).

5. Tex. Gov't Code Ann. § 311.026 (Vernon 1998); *Mayo v. State*, 4 S.W.3d 9, 11 (Tex. Crim.App.1999).

6. *See Ludwig v. State*, 931 S.W.2d 239, 242 n. 9 (Tex.Crim.App.1996).

7. *See Cheney v. State*, 755 S.W.2d 123, 126 (Tex.Crim.App.1988).

(2) after the period described by Subdivision (1), at any location other than the premises at which the person lives.[8]

Initially, the plain language of § 46.04 appears to encompass a person who has successfully completed his community supervision. The statute penalizes possessing a gun for five years after a person's "release from supervision under community supervision." This language can only refer to individuals who successfully complete their community supervision. To conclude, as the majority does, that § 46.04 does not apply to people like Cuellar renders that portion of the statute meaningless.

But the statute also begins by limiting its application to people who have been "convicted of a felony." What does "convicted" mean here? Does a successfully completed community supervision constitute a conviction? The statute does not say.[9]

We have recognized that "[t]he word 'convicted' can have several meanings." [10] For example, in Article 42.12, § 4(e), "convicted of a felony" means a final conviction.[11] But in the Constitution and in Article 42.12, § 3, "conviction" does not mean a final conviction.[12] In the Concealed

Handgun Act, "convicted" is defined as an adjudication of guilt "whether or not the imposition of the sentence is subsequently probated and the person is discharged from community supervision." [13]

"Convicted" is not defined in § 46.04 or in § 1.07, the Penal Code's definitional section. Words that are not defined in a statute must "be read in context and construed according to the rules of grammar and common usage." [14] Oxford's Dictionary defines the term "convicted" as "[p]roved or found guilty; condemned." [15] This broad definition would include a person in Cuellar's position. Cuellar was previously "proved guilty," regardless of what happened later.

It is also significant that the wording of the statute encompasses someone who used to have, but no longer has, a conviction. The statute refers to a person who "has been convicted of a felony," not a person who "has a felony conviction." Cuellar "has been convicted of a felony" in the past, even if, due to completing his community supervision, it could be said that he no longer has a felony conviction today.

I think that the language of the statute alone encompasses a successfully complet-

---

8. Tex. Penal Code Ann. § 46.04 (Vernon 1994).

9. *See* Dawson, Robert O., Texas Adult Probation Law Manual 103 (October 1981) (recognizing that "it is unclear whether it makes any difference that the defendant was sentenced to prison or placed on probation for the prior felony and, if the latter, whether he or she was still on probation or was discharged from probation . . .").

10. *McCarter v. State,* 527 S.W.2d 296, 300 n. 1 (Tex.Crim.App.1975).

11. *Ex parte Welch,* 981 S.W.2d 183, 184–85 (Tex.Crim.App.1998); *Baker v. State,* 520 S.W.2d 782, 783 (Tex.Crim.App.1975).

12. *Ex parte Giles,* 502 S.W.2d 774, 784 (Tex. Crim.App.1973).

13. Tex. Gov't Code Ann. § 411.171(4) (Vernon Supp.2001).

14. Tex. Gov't Code Ann. § 311.011 (Vernon 1998).

15. Oxford English Dictionary 548 (Compact Ed.1971).

ed community supervision, because it specifically prevents gun ownership within five years after community supervision has expired, it requires only that the person "has been convicted of a felony" at some time in the past, and a "conviction" can mean simply that the person was "proved guilty." Nevertheless, given the various potential meanings of the word "convicted," I will err on the side of caution and find the word ambiguous, thereby permitting a review of some extratextual factors.[16]

### B. Statutory history

The most telling extratextual factor, and the one on which I will focus, is the history of the statute. The prohibition against a felon possessing firearms has been part of our jurisprudence, in one form or another, since 1949. Back then, it could be found in Article 489c of the Penal Code, and it read as follows:

> Section 1. It shall be unlawful for any person who has been convicted of a felony involving an act of violence with a firearm under the laws of the United States or of the State of Texas, or of any other State, to have in his possession away from the premises upon which he lives, any pistol, revolver or any other firearm capable of being concealed upon the person.[17]

This first version of the statute required that the underlying felony involve "an act of violence with a firearm." It only prohibited possessing guns away from home, and only prohibited guns "capable of being concealed upon the person." The term

"firearm" was defined in § 3 of the statute as "having a barrel of less than twelve (12) inches in length,"[18] which would have excluded hunting rifles.

The statute was revised several times over the years. In 1957, the Legislature broadened the statute by adding burglary and robbery to the types of underlying felonies which brought a person within the terms of the statute:

> Section 1. It shall be unlawful for any person who has been convicted of burglary or robbery, or of a felony involving an act of violence with a firearm under the laws of the United States, or of the State of Texas, or of any other state, and who has served a term in the penitentiary for such conviction, to have in his possession away from the premises upon which he lives any pistol, revolver or any other firearm capable of being concealed upon the person.[19]

As can be seen, the Legislature also specified that the statute only applied to individuals who had "served a term in the penitentiary" for the underlying felony. In § 3 of the statute, the definition of "firearm" remained the same.

In 1969, the Legislature narrowed the statute by deleting the references to burglary and robbery, but broadened the statute by stating that the underlying felony need only involve "an act of violence," without any requirement that it involve the use of a firearm:

> Section 1. No person who has been convicted of a felony involving an act of violence may possess away from the

---

16. *See Boykin*, 818 S.W.2d at 785–86.

17. Acts 1949, 51st Leg., p. 1186, ch. 599, eff. July 25, 1949.

18. *Id.*

19. Acts 1957, 55th Leg., p. 50, ch. 28, § 1, eff. August 22, 1957.

premises upon which he lives a prohibited weapon, or firearm having a barrel of less than 12 inches in length.[20]

It also broadened the statute by deleting any requirement that the individual spend time in the penitentiary. This version of the statute continued to forbid only gun possession away from home, and retained the previous definition of "firearm."

The entire Penal Code was rewritten in 1974, and Art. 489c was moved to § 46.05. The new statute was significantly broader. It permitted the underlying felony to be one involving violence or "threatened violence":

> (a) A person who has been convicted of a felony involving an act of violence or threatened violence to a person or property commits an offense if he possesses a firearm away from the premises where he lives.[21]

The definition of "firearm" was moved to § 46.01 and was also broadened, deleting any limitation on the gun's barrel length. So for the first time, a hunting rifle fell within the types of firearms a felon was prohibited from possessing away from home.

Finally, in 1994, the statute moved to its current location in § 46.04 and took on its present language. These revisions involved still more broadening of the provision. For the first time in 1994, the prohibition against possessing a weapon applied to all felons, regardless of whether their underlying offense involved an act of violence. And for the first time, a felon was now prohibited from possessing a gun even at home, at least for five years after his supervision ended. After that, the previous restriction took effect, preventing from possessing a firearm away from home. The definition of "firearm" in § 46.01 remained unchanged.

The Legislature has changed the substance of this offense several times with the addition or deletion of just a few words. At times, the offense has only applied to persons after their release from the penitentiary, which would not include someone like Cuellar, who never went to prison. At times, the statute has applied specifically only to people who have committed crimes of violence. And at times, the statute has prohibited weapon possession only for certain kinds of guns, or only if possessed away from home.

Comparatively, the current statute is broader than all its previous versions. It applies regardless of the nature of the prior offense. It applies to gun possession both at home and away from home, preventing gun possession even at home for five years after the person's release from any type of supervision.[22] And, it applies to a person whether or not he ever spent time in prison.

## C.   Conclusion

My research indicates that, at least for the narrow purposes of § 46.04, a person has been convicted of a felony even if he is placed on community supervision and successfully completes that supervision. The plain language of the statute refers to community supervision, and the statute's history reflects the Legislature's decision

---

**20.** Acts 1969, 61st Leg., p.1951, ch. 653, § 1, eff. September 1, 1969.

**21.** Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. January 1, 1974.

**22.** *See State v. Mason,* 980 S.W.2d 635, 638 (Tex.Crim.App.1998).

to broaden the statute to include people who have never spent time in prison.

## II.  Art. 42.12, § 20

Having determined that § 46.04 applies to individuals who successfully complete their community supervision, the next question is, what is the impact of Article 42.12, § 20?  Do these two statutes conflict, and if so, which one governs?

### A.  Plain Language

Article 42.12, § 20, provides as follows:

(a) At any time, after the defendant has satisfactorily completed one-third of the original community supervision period or two years of community supervision, whichever is less, the period of community supervision may be reduced or terminated by the judge.  Upon the satisfactory fulfillment of the conditions of community supervision, and the expiration of the period of community supervision, the judge, by order duly entered, shall amend or modify the original sentence imposed, if necessary, to conform to the community supervision period and shall discharge the defendant.  If the judge discharges the defendant under this section, the judge may set aside the verdict or permit the defendant to withdraw his plea, and shall dismiss the accusation, complaint, information or indictment against the defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted or to which he has pleaded guilty, except that:

(1) proof of the conviction or plea of guilty shall be made known to the judge should the defendant again be convicted of any criminal offense;  and

(2) if the defendant is an applicant for a license or is a licensee under Chapter 42, Human Resources Code, the Texas Department of Human Services may consider the fact that the defendant previously has received community supervision under this article in issuing, renewing, denying, or revoking a license under that chapter.

(b) This section does not apply to a defendant convicted of an offense under Sections 49.04–49.08, Penal Code, a defendant convicted of an offense for which on conviction registration as a sex offender is required under Chapter 62, as added by Chapter 668, Acts of the 75th Legislature, Regular Session, 1997, or a defendant convicted of an offense punishable as a state jail felony.[23]

At first glance, § 20 appears to conflict with § 46.04, at least in terms of how each statute treats a person like Cuellar who successfully serves out his felony community supervision.  Section 20 requires a trial judge to remove "all penalties and disabilities" for this person, while § 46.04 prevents this person from possessing a gun.  But whether these two statutes actually conflict depends on the meaning and impact of § 20.

The majority concludes that, since the Legislature specifically listed two exceptions in subsection (a), but did not mention possession of handguns, then possession of handguns is not excepted.  While I agree that "[t]he Legislature could add other exceptions if it so chooses,"[24] the fact that gun possession is not mentioned in § 20

---

23.  TEX.CRIM. PROC.CODE ANN. Art. 42.12, § 20 (Vernon Supp.2001).

24.  *Ante,* slip op. at 7.

does not resolve the issue before the Court.

What are the "penalties and disabilities" which § 20 removes? Again, the statute provides no answer. Words that are not defined in a statute must "be read in context and construed according to the rules of grammar and common usage."[25] Oxford's Dictionary defines "penalty" as "a loss, disability, or disadvantage of some kind."[26] It defines "disability" as "a restriction framed to prevent any person or class of persons from sharing in duties or privileges which would otherwise be open to them."[27] Under these definitions, it certainly appears that preventing a person from possessing a gun would constitute a "penalty" or "disability."

On the other hand, other language in § 20 seems to presume that, even after "all penalties and disabilities" have been removed, a conviction still exists. Subsection (a)(1) states that "proof of the conviction" shall still be made known to the judge if the defendant is later convicted of another offense. So even though the penalties and disabilities, whatever those are, have been removed, a "conviction" apparently still exists. The Attorney General has similarly concluded that a final conviction still exists.[28] In interpreting the former version of § 20, he concluded:

> [I]n view of the fact that the statute [former Article 42.12, § 7] thereafter goes on to declare that ". . . proof of his state conviction . . ." and to say ". . . again convicted . . .", and in view of the fact that no provision is made for ex-

punging the "judgment of conviction" from the record, the statute by its own wording makes it clear that the "conviction" itself has not been entirely erased.[29]

Given the dictionary definitions of "penalty" and "disability" as contrasted with the statute's apparent presumption that a conviction still exists, I will again err on the side of caution and find that the effect of § 20 on § 46.04 is ambiguous. The penalties and disabilities are removed, indicating the individual would not be subject to the restraints of § 46.04, but the conviction remains, indicating he would be subject to § 46.04. To resolve the ambiguity, I will again look to extratextual factors, beginning with § 20's statutory history.

## B. Statutory History

Like § 46.04, Article 42.12, § 20, has an impressive, though less eventful, pedigree. It entered the Code in 1957 as Art. 781d, § 7, and has remained almost unchanged since then:

> At any time, after the defendant has satisfactorily completed one-third of the original probationary period or two years of probation, whichever is the lesser, the period of probation may be reduced or terminated by the court. Upon the satisfactory fulfillment of the conditions of probation, and the expiration of the period of probation, the court, by order duly entered, shall amend or modify the original sentence imposed, if necessary, to conform to the probation

25. TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998).

26. OXFORD ENGLISH DICTIONARY 2117 (Compact Ed.1971).

27. *Id.* at 737.

28. Op. Tex. Att'y Gen. No. MW–148 (1980).

29. Op. Tex. Att'y Gen. No. M–640 (1970) (emphasis deleted).

period and shall discharge the defendant. In case the defendant has been convicted or has entered a plea of guilty, and the court has discharged the defendant hereunder, such court may set aside the verdict or permit the defendant to withdraw his plea, and shall dismiss the accusation, complaint, information or indictment against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted or to which he has pleaded guilty, except that proof of his said conviction or plea of guilty shall be made known to the court should the defendant again be convicted of any criminal offense.[30]

Minor amendments were made along the way. In 1966, the Legislature moved this provision to Article 42.12, § 7, and added the phrase "or nolo contendere" after the reference to a plea of guilty.[31] In 1984, the Legislature excepted two offenses from the statute: an offense under Penal Code § 19.05(a)(2) and an offense under Article 67011–1 of the Code of Criminal Procedure (both alcohol-related offenses).[32]

In 1989, this provision moved to § 23 of Article 42.12.[33] At that time, the Legislature added the second exception concerning an application for a license under Chapter 42 (regarding the operation of child care facilities). In 1993, it was moved to its current location in Article 42.12, § 20.[34] The Legislature made some non-substantive, clerical changes and moved the two listed exceptions to a separate subsection, subsection (b). It also added state jail felonies to the list of offenses excepted. Most recently, in 1999, the Legislature added the sex offender exception.[35]

Despite all the amendments, or perhaps because of them, the statute in its current form is not a model of clarity. The majority concludes that "there are two entirely different types of 'discharge'"[36] under § 20. One is apparently the removal of the person from the requirements of community supervision, while the other is setting aside the verdict and dismissing the charging instrument.[37] The majority views setting aside the verdict, permitting the defendant to withdraw his plea, and dismissing the charging instrument all as optional actions which constitute a form of "judicial clemency."[38] In this case, the judge's order both "set aside" the "judgment of conviction" and dismissed the indictment. Presumably, under the majority's analysis of § 20, both these actions by the judge were optional and, therefore, reflect that the judge elected to grant Cuellar clemency.

I strongly disagree with the majority's interpretation of § 20. Since its enact-

**30.** Acts 1957, 55th Leg., p. 466, ch. 226, eff. August 23, 1957.

**31.** Acts 1965, 59th Leg., vol. 2, p. 492, ch. 722, eff. September 1, 1966.

**32.** Acts 1983, 68th Leg., p. 1587, ch. 303, § 12, eff. January 1, 1984.

**33.** Acts 1989, 71st Leg., ch. 785, § 4.17, eff. September 1, 1989.

**34.** Acts 1993, 73rd Leg., ch. 900, § 4.01, eff. September 1, 1993.

**35.** Acts 1999, 76th Leg., ch. 1415, § 5(b), eff. September 1, 1999.

**36.** *Ante,* slip op. at 5.

**37.** *Id.,* slip op. at 5–6.

**38.** *Id.,* slip op. at 6.

ment in 1957, the statute has provided that, if the judge discharges the defendant under this section, he "may set aside the verdict or permit the defendant to withdraw his plea, and shall dismiss the accusation, complaint, information or indictment against the defendant ..." Dismissing the charging instrument has always been mandatory and has always resulted in a release from all penalties and disabilities, while setting aside the verdict or permitting the defendant to withdraw his plea has always been discretionary. Regardless of whether the judge sets aside the verdict or allows the defendant to withdraw his plea, the judge must dismiss the charging instrument, which releases the defendant from all penalties and disabilities.

Analyzing the statute in this manner raises an inevitable question: what would happen if the judge elected not to set aside the verdict or permit the defendant to withdraw his plea? That is, what is accomplished by setting aside the verdict or allowing the defendant to withdraw his plea which is not accomplished by dismissing the charging instrument? My answer is, not one thing.[39]

To understand why the statute is worded as it is requires first to understand that, at the time the statute first appeared in the Code, a defendant was not permitted to waive a jury trial if he pleaded not guilty.[40] Back then, a defendant could go to the judge or the jury with his guilty plea, but if he pleaded not guilty, he had to go before a jury. In addition, the term "verdict" refers only to a jury's decision, not a judge's decision.[41]

Given this backdrop, I believe the confusing language in § 20 made a little more sense when it was enacted. The statute required that the judge dismiss the charging instrument. Then, in an effort to dispose of the remaining paperwork associated with the case, the statute gave the judge the option of either setting aside the verdict or allowing the defendant to withdraw his plea. Which option the judge chose depended on whether the defendant had gone before a judge or a jury. If the defendant had had a jury trial, the judge would set aside the verdict; if the defendant had pleaded guilty before the judge, the judge would allow the defendant to withdraw his plea. So the permissive language in the phrase "may set aside the verdict or permit the defendant to withdraw his plea" does not mean that, once a judge dismisses the charging instrument, he may elect to do neither of these options. It means, instead, that he may elect which of these options to do, but he certainly will do one of them.

But even if he could choose to do neither of them, as the majority suggests, that choice would have no impact on the underlying case, because the charging instrument has been dismissed. Without a charging instrument, there can be no verdict and there can be no plea. Setting aside the verdict or allowing the defendant to withdraw his plea are merely formali-

**39.** *But see United States v. Sauseda,* 2000 U.S. Dist. LEXIS 21323 (West. Dist. TX 2000).

**40.** Acts 1931, 42nd Leg., p. 65, ch. 43, § 1, eff. August 23, 1931.

**41.** Tex.Crim. Proc.Code Ann. Art. 37.01(Vernon 1981). *See also State v. Lewallen,* 927 S.W.2d 737 n. 2 (Tex.App.-Fort Worth 1996, no pet.); *State v. Davenport,* 866 S.W.2d 767, 769 n. 2. (Tex.App.-San Antonio 1993, no pet.); *Williams v. State,* 42 S.W.2d 441, 118 Tex. Crim. 366 (1931) (construing Art. 686, predecessor to Art. 37.01).

ties-the important procedures occur once the judge dismisses the charging instrument, a mandatory act upon discharging the defendant from community supervision.

Article 1.13 was revised in 1965, and since then, defendants have been able to plead not guilty before a judge, waiving their right to a jury trial. So the language in § 20 may be dated. But, though awkwardly worded, the discretionary options still make some sense. The judge may choose to either set aside the verdict, if there was one, or allow the defendant to withdraw his plea, if he went before the court.

Nevertheless, as stated, the important part of § 20 is the mandatory dismissal of the charging instrument and the resulting release from all penalties and disabilities. With that, the question remains, what is the impact of this language?

## C.  Other Statutes and Caselaw

Professors Dix and Dawson have recognized that "[d]espite the broad language" of this statute, "the consequences of a dismissal of the accusation are quite limited."[42] They explain that § 20 "operates

to restore civil rights-to vote, serve on juries, and hold public office-that were lost by the conviction or accusation of crime. However, the dismissal is not an expunction and does not preclude other collateral consequences of a criminal conviction."[43]

A review of other statutes confirms this. Significantly, regardless of the language of § 20 removing "all penalties and disabilities," there are a number of statutes which impose various restrictions on a person who has successfully completed his community supervision. Specifically, this person still cannot change his name until two years after his community supervision has expired,[44] cannot practice law until five years after his community supervision has expired,[45] cannot work at a bingo establishment until ten years after his community supervision has expired,[46] cannot obtain a lottery license until ten years after his community supervision has expired,[47] and cannot be a corrections officer[48] until ten years after his community supervision has expired.

These time-limited restrictions are not the only limitations. For the rest of his life, this person cannot be a bail bond surety[49] or a peace officer,[50] cannot get his record expunged,[51] and cannot obtain a

**42.** 43A GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 40.136 (2d ed.2001).

**43.** *Id.* at 173.

**44.** TEX. FAM.CODE ANN. § 45.103 (Vernon 1996).

**45.** TEX.R. GOVERN. BAR ADM'N IV (West 2001) Rule IV(d)(2)

**46.** TEX. OCC.CODE ANN. § 2001.105(a)(6) (Vernon 2000).

**47.** TEX. GOV'T CODE ANN. § 466.155(a)(1)(A) (Vernon 1998).

**48.** TEX. OCC.CODE ANN. §§ 1701.312(b), 1702.371 (Vernon 2000).

**49.** TEX. OCC.CODE ANN. § 1704.153 (Vernon 2001); *Smith v. Wise County Bail Bond Bd.,* 995 S.W.2d 881, 883–84 (Tex.App.-Fort Worth 1999, writ denied).

**50.** TEX. OCC.CODE ANN. § 1701.312(b)(1) (Vernon 2001); Op. Tex. Att'y Gen. MW 148 (1980).

**51.** *State v. Gamble,* 692 S.W.2d 200, 202 (Tex. App.-Fort Worth 1985, no pet.).

license to carry a concealed handgun.[52] He may be denied a license as a speech pathologist or audiologist.[53] Further, despite successfully completing his community supervision, he still must register as a sex offender for the rest of his life, if he has committed a sex offense.[54] In addition, the Attorney General concludes that this person must inform any prospective employers about the conviction when asked about his criminal history.[55] Also, under federal law, he can still get deported.[56]

And, of course, the entire incident is still admissible at sentencing in any future trial.[57] It can still be used to mandate a life sentence in certain circumstances [58] and to enhance an assault conviction from a Class A misdemeanor to a third-degree felony.[59]

It still prevents him from being eligible for community supervision in the event of a future conviction.[60] And this person is still subject to civil commitment as a sexually violent predator if he commits more than one sexually violent offense, even if one of those convictions involved a successfully completed community supervision.[61]

In contrast, there are some statutes specifying that a person who successfully completes his community supervision shall have certain rights reinstated. This person can serve on a jury,[62] can vote,[63] can hold elected office,[64] and can be a notary public.[65] And the incident may not be used to impeach his testimony [66] or to enhance the punishment range pursuant to § 12.42 in any future trial [67] (except for the mandatory life sentence provided for in

---

52. Tex. Gov't Code Ann. §§ 411.171(4), 411.172(a)(3) (Vernon 2001); *Tune v. Texas Dept. of Public Safety*, 23 S.W.3d 358, 362 (Tex.2000).

53. Tex. Occ.Code Ann. § 401.453(a)(3) (Vernon 2001).

54. Tex.Crim. Proc.Code Ann. Arts. 62.06, 62.10, 62.12 (Vernon Supp.2001).

55. Op. Tex. Att'y Gen. No. JM–1237 (1990).

56. *State v. Jimenez*, 987 S.W.2d 886, 889 n. 2 (Tex.Crim.App.1999).

57. *Glenn v. State*, 442 S.W.2d 360, 362 (Tex. Crim.App.1969).

58. Tex. Penal Code Ann. § 12.42(c)(2), (g) (Vernon Supp.2001); *Price v. State*, 35 S.W.3d 136 (Tex.App.-Waco 2000, no writ).

59. Tex. Penal Code Ann. § 22.01(b)(2), (f) (Vernon Supp.2001).

60. *Taylor v. State*, 612 S.W.2d 566, 571 (Tex. Crim.App.1981).

61. Tex. Health & Safety Code Ann. § 841.003(b)(1)(A) (Vernon Supp.2001).

62. *Walker v. State*, 645 S.W.2d 294, 295 (Tex. Crim.App.1983); *Payton v. State*, 572 S.W.2d 677, 679 (Tex.Crim.App.1978); Op. Tex. Att'y Gen. No. M 640 (1970). *But see R.R.E. v. Glenn*, 884 S.W.2d 189, 194 (Tex.App.-Fort Worth 1994, writ denied).

63. Tex. Elec.Code Ann. § 13.001(a)(4) (Vernon Supp.2001); Op. Tex. Att'y Gen. No. M 640.

64. Tex. Elec.Code Ann. § 141.001 (Vernon 1986); Op. Tex. Att'y Gen. No. M 1184 (1972).

65. Tex. Gov't Code Ann. § 406.009(e) (Vernon 1998).

66. *Ex parte Menchaca*, 854 S.W.2d 128, 131 (Tex.Crim.App.1993); *Trippell v. State*, 535 S.W.2d 178, 180 (Tex.Crim.App.1976); *Parker v. State*, 384 S.W.2d 712, 714 (Tex.Crim.App. 1964). *But see Etheridge v. State*, 903 S.W.2d 1, 20 (Tex.Crim.App.1994).

67. *Jordan v. State*, 36 S.W.3d 871, 875 (Tex. Crim.App.2001); *Ex Parte Langley*, 833 S.W.2d 141, 143 (Tex.Crim.App.1992).

subsection (c)(2) [68]).

But overall, the limitations outweigh the restored rights. So despite § 20's alleged release from "all penalties and disabilities," a person discharged under this section is still subject to quite a few restrictions.

### D. Clemency and Pardons

As mentioned above, the majority refers to the release from all penalties and disabilities in this section as "judicial clemency." [69] But is it? And even if it is, is "judicial clemency" equal to, or something different than, a pardon from the Governor?

We have previously found "room to doubt" whether this statute "is the equivalent of a full pardon," though we assumed it was for purposes of that case. [70] One court of appeals has indicated that interpreting § 20 as granting a pardon would render the statute unconstitutional as an infringement upon the executive branch. [71] The Attorney General has opined that a discharge from community supervision under this statute does not make a person eligible to receive a pardon from the Governor, [72] indicating that, whatever is granted in Art. 42.12, § 20, it is less than a pardon.

But even if we were to conclude that a judge's release from all penalties and disabilities is equal to a Governor's pardon, we have held that a pardon does not prevent the underlying conviction from being used in a felon-in-possession case, unless the pardon was based upon a finding that the person was actually innocent of that offense. [73] We later elaborated that a pardon "forgives only the penalty" and does not "direct that the courts shall forget either the crime or the conviction." [74] Since "the very essence of a pardon is forgiveness ... a pardon implies guilt; it does not obliterate the fact of the commission of the crime and the conviction." [75]

If a pardoned conviction can be used as the underlying felony conviction in a § 46.04 prosecution, then a successfully completed community supervision should not be treated any differently. Whatever the impact of § 20, it ought be no greater than a pardon from the Governor. I believe that § 20 provides no more relief than a pardon and so does not render the defendant immune from future prosecution under § 46.04.

### E. The Concurring Opinion

In her concurring opinion, Judge Cochran relies on the "rule of lenity" to conclude that § 46.04 does not encompass someone who has successfully completed his community supervision. She cites an 1886 Texas case and a 1955 United States

---

**68.** TEX. PENAL CODE ANN § 12.42(g) (Vernon Supp.2001).

**69.** *Ante,* slip op. at 6.

**70.** *Taylor v. State,* 612 S.W.2d 566, 570–71 (Tex.Crim.App.1981).

**71.** *Glenn,* 884 S.W.2d at 192–93.

**72.** Op. Tex. Att'y Gen. No. DM–393 (1996).

**73.** *Runo v. State,* 556 S.W.2d 808, 809–10 (Tex.Crim.App.1977); *see also* Op. Tex. Att'y Gen. No. MW–270 (1980) (pardon does not entitle convicted felon to be certified as peace officer unless based on proof of innocence).

**74.** *Watkins v. State,* 572 S.W.2d 339, 341 (Tex. Crim.App.1978).

**75.** *Jones v. State,* 141 Tex.Crim. 70, 147 S.W.2d 508, 510 (1941).

Supreme Court case as authority. But both our Court and the United States Supreme Court have since greatly limited the application of that rule.

The rule of lenity is not something we have often mentioned in the course of construing statutes. By my calculations, we have referred to it only seven times over the last 116 years.[76] Judge Cochran says this is because our Penal Code is clearly written. I disagree. Despite the Legislature's "precision," we have very often found ambiguities in various statutes over the last century. But rather than resorting to the rule of lenity, we have instead relied on other, much more helpful rules of statutory construction, including acquiescence on the part of the Legislature and judiciary,[77] making all the provisions of the statute consistent with each other and with the pre-existing body of the law,[78] the consequences of a particular construction,[79] the history of legislation,[80] the comments of the legislators in passing the bill,[81] the purpose of the statute,[82] looking at the language as a whole rather than rigidly construing individual words,[83] giving effect to every word if possible,[84] and giving effect to more specific provisions over general provisions.[85] These considerations mirrored those in the Code Construction Act even before that Act was written.

Today, our leading case on statutory construction is *Boykin v. State.*[86] In *Boykin*, we explained that if the meaning of the statutory text should have been plain to the legislators who voted on it, we should give effect to that meaning.[87] But if the plain language is ambiguous or leads to an absurd result, we should then consider extratextual factors.[88] The extratextual factors include those listed in the Code

---

76. *Thomas v. State*, 919 S.W.2d 427 (Tex. Crim.App.1996); *Engelking v. State*, 750 S.W.2d 213 (Tex.Crim.App.1988); *Bruner v. State*, 463 S.W.2d 205 (Tex.Crim.App.1970); *Ex parte Wilmoth*, 125 Tex.Crim. 274, 67 S.W.2d 289 (1933); *Patillo v. State*, 120 Tex. Crim. 568, 47 S.W.2d 847 (1932); *Egan v. State*, 68 S.W. 273 (Tex.Crim.App.1902); *Murray v. State*, 21 Tex.App. 620, 2 S.W. 757, 761 (1886) (op. on reh'g).

77. *Smith v. State*, 108 Tex.Crim. 358, 300 S.W. 82 (1927).

78. *Chapin v. State*, 107 Tex.Crim. 477, 296 S.W. 1095, 1100 (1927).

79. *Sparks v. State*, 76 Tex.Crim. 263, 174 S.W. 351, 352 (1915).

80. *Almanza v. State*, 686 S.W.2d 157, 166 (Tex.Crim.App.1984) (op. on reh'g); *Ex parte Peede*, 75 Tex.Crim. 247, 170 S.W. 749, 752 (1914); *Augustine v. State*, 41 Tex.Crim. 59, 52 S.W. 77, 80–81 (1899).

81. *Peede*, 170 S.W. at 754.

82. *Sanchez v. State*, 23 S.W.3d 30, 34 (Tex. Crim.App.2000); *Longoria v. State*, 126 Tex. Crim. 362, 71 S.W.2d 268, 269 (1934); *Ex parte Flake*, 67 Tex.Crim. 216, 149 S.W. 146, 150 (1911); *Jenkins v. State*, 60 Tex.Crim. 236, 131 S.W. 542, 550 (1910); *Cromeans v. State*, 59 Tex.Crim. 611, 129 S.W. 1129, 1132 (1909); *Croomes v. State*, 40 Tex.Crim. 672, 51 S.W. 924, 927 (1899).

83. *Weatherred v. State*, 129 Tex.Crim. 514, 89 S.W.2d 212, 215–16 (1935) (op. on reh'g); *Cromeans*, 129 S.W. at 1132; *Croomes*, 51 S.W. at 927.

84. *Campbell v. State*, 49 S.W.3d 874, 876 (Tex.Crim.App.2001); *Whitelaw v. State*, 29 S.W.3d 129, 131 (Tex.Crim.App.2000); *Rocha v. State*, 16 S.W.3d 1, 14 (Tex.Crim.App.2000).

85. *Campbell*, 49 S.W.3d at 876.

86. 818 S.W.2d at 785.

87. *Id.*

88. *Id.*

Construction Act and mentioned above. No mention is made in *Boykin* of the rule of lenity. A year after we handed down *Boykin,* we analyzed a statute's meaning by following the method outlined in *Boykin,* specifically rejecting the dissent's reliance on the rule of lenity.[89] That does not mean that the rule of lenity no longer exists in Texas. But it should not be used until all other avenues have been exhausted and a statute's meaning remains ambiguous.[90]

Indeed, this is exactly what the United States Supreme Court has stated many times. That Court has "repeatedly stated that 'the rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended.'"[91] "The rule comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers."[92]

The simple existence of some statutory ambiguity is not sufficient to warrant application of that rule because "most statutes are ambiguous to some degree."[93] A statute is not "ambiguous" for purposes of lenity merely because there is a division of judicial authority over its proper construction.[94] Rather, to invoke the rule, the Court must conclude that there is a "grievous ambiguity or uncertainty in the statute."[95] Only "where text, structure, and history fail to establish that the Government's position is unambiguously correct [will that Court] apply the rule of lenity."[96] As the Supreme Court has explained, "we have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute."[97]

In line with the Supreme Court's teachings, I have attempted to discern the meaning of § 46.04 and Article 42.12, § 20, by looking at each statute's text and history, as well as other pertinent statutes. This leads to the conclusion that § 46.04 applies to individuals who have successful-

**89.** *Iglehart v. State,* 837 S.W.2d 122, 127 n. 5 (Tex.Crim.App.1992).

**90.** *See State v. Houth,* 845 S.W.2d 853, 866 n. 2 (Tex.Crim.App.1992) (Benavides, J., concurring).

**91.** *Holloway v. United States,* 526 U.S. 1, 12 n. 14, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999); *United States v. Wells,* 519 U.S. 482, 499, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997); *Reno v. Koray,* 515 U.S. 50, 65, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995); *Smith v. United States,* 508 U.S. 223, 239–40, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993); *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958).

**92.** *National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 262, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994); *Gozlon–Peretz v. United States,* 498 U.S. 395, 409, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991); *Callanan v. United*

*States,* 364 U.S. 587, 596, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961).

**93.** *Muscarello v. United States,* 524 U.S. 125, 138, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998).

**94.** *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990).

**95.** *Id.; Staples v. United States,* 511 U.S. 600, 619 n. 17, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (*quoting Chapman v. United States,* 500 U.S. 453, 463, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991)).

**96.** *United States v. Granderson,* 511 U.S. 39, 54, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994).

**97.** *United States v. R.L.C.,* 503 U.S. 291, 305–06, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992); *Moskal,* 498 U.S. at 108, 111 S.Ct. 461.

ly completed their community supervision. So the rule of lenity just does not apply in this case. Judge Cochran says that she has granted my argument "every benefit of the doubt" and then applied the rule of lenity, but the rule does not apply if the ambiguity is resolved through standard methods of statutory construction, as it is here.

Judge Cochran contends that I am "turn[ing] statutory construction on its head." In reply, I contend that she turns a blind eye to *Boykin* and all accepted rules of statutory construction. She ignores the plain language of § 46.04, which specifically states its application to individuals until the fifth anniversary of their release "from supervision under community supervision," as well as the plain language of § 20, which indicates that a "conviction" still exists despite any release from "all penalties and disabilities." She ignores the history of both statutes, in particular the Legislature's decision to delete from § 46.04 any requirement that a person subject to that statute have spent time in the penitentiary. She ignores all the other statutes which impose various restrictions on individuals who successfully complete their community supervision. And she rigidly looks at one phrase in § 20, the release from penalties and disabilities, without considering other language in that statute and in § 46.04. In addition, she ignores our own caselaw holding that even a felon who receives a pardon from the Governor is still subject to the provisions of § 46.04.[98] Instead, Judge Cochran places sole reliance on the rule of lenity. I believe a thorough construction of any statute, and especially two statutes which appear to conflict, requires much more.

### III. Conclusion

#### A. No conflict

Given the entirety of our statutory scheme, I conclude that § 20's release from "all penalties and disabilities" is not absolute. Even after a release from all penalties and disabilities, a person's rights are limited. One of those limitations is on gun possession. I also conclude that when a judge issues an order pursuant to Art. 42.12, § 20, that order does not erase all memory of the conviction. For purposes of § 46.04, the person still "has been convicted of a felony" and is still subject to the provisions of that statute. Construed in this manner, the statutes do not conflict.

#### B. Alternatively, a conflict

But even if there were a conflict between the two statutes, our Code Construction Act states that the specific statute should control over the general, unless the general provision was enacted later and it is apparent that it was intended to prevail.[99]

The general statute in this instance is Article 42.12, § 20. It broadly applies to all misdemeanants and felons who have been placed on community supervision. It broadly removes "all penalties and disabilities" once that community supervision has been successfully completed. Then there are a number of more specific statutes which limit the rights available even after community supervision is successfully completed. Section 46.04 specifically applies only to felons and provides a specific limitation on a felon's right to possess a gun. This specific provision controls over the general provisions of Article 42.12, § 20.

---

98. *Runo v. State*, 556 S.W.2d at 809–10.

99. Tex. Gov't Code Ann. § 311.026 (Vernon 1998); *Mayo*, 4 S.W.3d at 11.

For § 20 to control, it would have to be "apparent" that the Legislature intended it to control. It is not. And considering the number of other statutes which limit a person's rights even after discharging his community supervision, it seems that just the opposite is apparent-that § 46.04 controls.

## C. Public Policy

The majority concludes that a person who successfully completes his community supervision "should not be stigmatized for the rest of his life. Such persons have demonstrated that they are ready to rejoin the community as law-abiding citizens."[100] The majority finds it "difficult to understand" why the State would allow Cuellar to sit on a jury and vote in elections but not possess a gun.[101] The question is not whether it is difficult to understand, but whether it is an absurd result that the Legislature could not possibly have intended. It is not. It is not absurd to allow Cuellar to sit on a jury and vote but not own a gun. Sitting on a jury and voting do not, as a general rule, lead to violence. Possessing a gun often does. The Legislature apparently believes that some restrictions are warranted for individuals who are convicted of a felony and then successfully complete their community supervision. If it is poor public policy to prevent a person in this category from going hunting, then that is for the Legislature to correct.

Is it fair that Cuellar was prosecuted and convicted essentially for going hunting some 15 years after he successfully completed his community supervision? Probably not. The district attorney's decision to prosecute this case is astonishing. "But the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment."[102] Our oaths are to uphold the constitutions and laws of this country and state; they are not a commission to do what a majority of us think is fair.[103] This is a court of law, not equity. As we have previously stated:

> Courts have no power to legislate. It is the court's duty to observe, not to disregard statutory provisions. Courts can neither ignore nor emasculate the statutes. Further, courts have no power to create an exception to a statute, nor do they have power to add to or take from legislative pains, penalties and remedies. It is for the Legislature, not the courts, to remedy defects or supply deficiencies in the laws, and to give relief from unjust and unwise legislation.[104]

Judges should not impose their "personal and private notions of fairness" on the law.[105] By doing so, the majority blurs the distinction between lawmaker and law interpreter beyond recognition.[106]

Although the Attorney General agrees with the majority's position in this case,

---

**100.** *Ante,* slip op. at 4 n. 3.

**101.** *Id.*

**102.** *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

**103.** *Ex parte Smith,* 977 S.W.2d 610, 611 (Tex.Crim.App.1998).

**104.** *State v. Ross,* 953 S.W.2d 748, 751 n. 4 (Tex.Crim.App.1997); *Ex parte Hayward,* 711 S.W.2d 652, 655–56 (Tex.Crim.App.1986).

**105.** *See Dowling v. United States,* 493 U.S. 342, 353, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

**106.** *See Ross,* 953 S.W.2d at 755.

albeit for somewhat different reasons,[107] I wholeheartedly disagree. I would reverse the judgment of the court of appeals and affirm Cuellar's conviction. Because the majority does not do so, I dissent.

---

107. Op. Tex. Att'y Gen. No. JC–0396 (2001).