Michael Ray COMEAUX, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 09–04–010 CR, 09–04–011 CR.

Court of Appeals of Texas,
Beaumont.

Submitted Sept. 2, 2004.

Decided Nov. 17, 2004.

James A. DeLee, Port Arthur, for appellant.

Tom Maness, Criminal Dist. Atty., Wayln G. Thompson, Asst. Criminal Dist. Atty., Beaumont, for state.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

In separate indictments, appellant, Michael Ray Comeaux, was charged with as-

sault committed on a member of his family or household. *See* TEX. PEN.CODE ANN. § 22.01(a)(1), (b)(2) (Vernon 2003).[1] Cause number 87667 alleged that on or about August 20, 2002, appellant caused bodily injury to the victim, L.W., and that L.W. was a member of appellant's family or household. The indictment further alleged that appellant had previously been convicted of an offense against a member of his family or household on January 11, 1996, in cause number 174943. The second indictment, cause number 87725, contained an identical charge of assault on L.W. and also alleged the previous 1996 assault conviction. The second indictment was different in two respects; the offense date alleged was September 17, 2002, and it further contained an enhancement paragraph alleging a prior felony conviction for Involuntary Manslaughter in 1988.

In cause number 87725, appellant elected to waive a jury and go to trial before the court. The trial court found appellant guilty and sentenced him to four years' confinement in the Texas Department of Criminal Justice, Institutional Division. Based upon these events, appellant pleaded guilty to the charge in Cause No. 87667 and was assessed a four year sentence of incarceration, to run concurrently with the sentence in Cause No. 87725. The trial court certified appellant's right to appeal in both cases. Appellant raises one identical issue for our consideration in both appeals, *viz:* "Whether the use of the enhancement conviction is a violation of protection against ex post facto law." Our resolution of these appeals will be combined in this single opinion as the applicable authorities are the same.[2]

---

1. We cite here to the Penal Code provision in effect at the time appellant committed the instant offenses. Although not germane to the issue before us, we note the 78th Legisla-

ture amended section 22.01 in 2003. *See* TEX. PEN.CODE ANN. § 22.01 (Vernon Supp.2004).

2. In each case, appellant filed a pretrial motion entitled, "Motion To Set Aside Enhance-

The following sequence of events are not in dispute. On October 26, 1993, appellant committed a family assault on K.D.C., in Jefferson County, Texas, cause number 174943. On January 11, 1996, appellant was convicted in a non-jury trial of the misdemeanor offense of "Assault–Family" in cause number 174943. The trial judge assessed punishment at confinement in the Jefferson County Jail for 90 days, and included a fine of $650. The trial court suspended immediate imposition of incarceration and placed appellant on community supervision for one year. From all appearances, appellant successfully served his one-year term of community supervision.[3]

In his brief, appellant asserts that:

At the time of this [1996] conviction the law as pertains to enhancement of future acts of family violence was as follows:

(1) An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is:

(2) A state jail felony if it is shown in the trial of the offense that the offense was committed against a family member [and] that the defendant has been previously convicted of an offense against a family member under this section two or more times.

However, appellant is mistaken about the law in effect on October 26, 1993, the date of the prior offense. At that time, a first-offense family assault was a Class A misdemeanor unless:

(3) the offense is committed against a family member and the actor has been previously convicted under this section for an offense against a family member

two or more times, in which event the offense is a felony of the third degree. Act of May 17, 1991, 72nd Leg., R.S., ch. 366, § 1, 1991 Tex. Gen. Laws 1415, 1416 (amended 1993, 1995, 1997, 1999, 2003) (current version at Tex. Pen.Code Ann. § 22.01(b)(2) (Vernon Supp.2004)). Therefore, the law in effect in October of 1993, when the prior offense was committed, provided for the identical punishment exposure that appellant complains of in the instant appeals. The 1993 law did, however, require *two* previous family assault convictions before a defendant faced the felony punishment exposure. However, the authorities appellant cites in his brief do not support his argument that review of an *ex post facto* violation "should be on the enhancement conviction on (sic) offense and not on the instant offense." We find no merit to this argument which focuses entirely on the mistaken distinction between appellant's "third degree felony" punishment exposure (actual) and the "state jail felony" punishment exposure (mistaken). Instead, we find we must address another issue we discovered on the face of the records before us, also involving *ex post facto* law, even though it was not specifically brought to the trial court's attention nor specifically argued to us on appeal. As noted in *Blue v. State,* 41 S.W.3d 129, 131 (Tex.Crim.App.2000), pursuant to TEX.R. EVID. 103(d), reviewing courts are authorized to "tak[e] notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court." Our explanation and analysis follow.

As noted above, the instant offenses were committed on or about August 20, 2002, and September 17, 2002. At the

ment Due To Being Ex Post Facto Law." The trial court denied the motion in each case.

**3.** The record does not indicate appellant's community supervision was revoked. Indeed,

the pre-sentence investigation report filed prior to sentencing in the instant case indicates that the 1996 community supervision was "[c]ompleted [s]uccessfully."

time appellant committed his prior family assault, section 22.01of the Texas Penal Code did not include sub-section (f), which was added to section 22.01 in 1999. *See* Act of May 26, 1999, 76th Leg., R.S., ch. 1158, § 1, sec. 22.01, 1999 Tex. Gen. Laws 4063. Sub-section (f) of section 22.01 took effect on September 1, 1999, and currently reads as it did on the dates of commission of the instant offenses:

> (f) For the purposes of this section, a defendant has been previously convicted of an offense against a member of the defendant's family or a member of the defendant's household under this section if the defendant was adjudged guilty of the offense or entered a plea of guilty or nolo contendere in return for a grant of deferred adjudication, regardless of whether the sentence for the offense was ever imposed or whether the sentence was probated and the defendant was subsequently discharged from community supervision.

*See* Tex. Pen.Code Ann. § 22.01(f) (Vernon Supp.2004).

In *Scott v. State*, 55 S.W.3d 593 (Tex. Crim.App.2001), the Court of Criminal Appeals framed the issue before it in the following manner: "Can a successfully completed deferred adjudication be used to enhance punishment for a later offense when the provision permitting such enhancement did not exist at the time adjudication was deferred?" *Id.* at 594. The issue we must decide can be framed as follows: "Can a successfully completed and subsequently discharged "regular"[4] community supervision be used to enhance punishments for later offenses when the

provision permitting such enhancement did not exist at the time the "regular" community supervision was imposed in lieu of incarceration?" The Court in *Scott* answered its question "no," and reversed the defendant's conviction. *Id.* at 594–95. As we will explain, we feel constrained to answer our question "yes," and affirm the convictions.

The enhancement provision in *Scott* contains language that is substantively identical to the language contained in section 22.01(f). *See Scott*, 55 S.W.3d at 596. Scott complained on direct appeal and on petition for discretionary review that this sentencing scheme violated the United States Constitution's prohibition against *ex post facto* laws. *Id.* In addition to the questioned enhancement provision, the *Scott* Court noted a second key statute which played prominently in resolving the issue:

> When appellant pled guilty in 1991 to indecency with a child, the deferred adjudication statute provided that a discharged deferred adjudication would not be considered a conviction except in certain enumerated circumstances:
>
> > A dismissal and discharge under this section may not be deemed a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense except that....

*Id.* at 595 (footnote omitted). *See also* Tex.Code Crim. Proc. Ann. art. 42.12, sec. 5(c) (Vernon Supp.2004).[5] The Court construed the enhancement scheme in question and concluded that the legislature in-

---

**4.** We use the term "regular" in describing this type of community supervision to distinguish it from deferred adjudication community supervision. Regular community supervision involves a finding of guilt and formal assessment of punishment, while deferred adjudication community supervision does not.

*See* Tex.Code Crim. Proc. Ann. art. 42.12, sec. 2(2) (Vernon Supp.2004).

**5.** The current version of section 5(c) contains language identical to that portion quoted by the Court in *Scott* as set out above.

tended for it to apply to past deferred adjudications, "i.e. those that were assessed before the change in the law." *Id.* at 596. The Court also construed the "disqualifications or disabilities" language in art. 42.12, sec. 5(c) to include enhancement of punishment. *Id.* at 596–97. The Court concluded by noting its traditional position on *ex post facto* punishment-law issues, and then contrasted the facts and the law as applied to Scott's situation:

Among other things, the *ex post facto* clause prohibits "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." Both the United States Supreme Court and this Court have addressed the issue of prior crimes used to enhance punishment and have declined to find an *ex post facto* violation. In arriving at its holding the Supreme Court found that enhancement statutes penalize the new criminal offense being enhanced rather than the prior offense used for enhancement: "The punishment is for the new crime only, but is the heavier if he is an habitual criminal. . . . The statute, imposing a punishment on none but future crimes, is not *ex post facto.*"[6]

The distinguishing factor in this case is the existence in the prior statute of an explicit limitation on the collateral consequences of deferred adjudication. The resolution of criminal charges will always carry the possibility of collateral consequences, and as long as those consequences are not statutorily restricted, disabilities and disqualifications which the defendant might not have anticipated may proceed from the prior cause. *But when a statute explicitly restricts the collateral consequences of an offense,*

*the defendant is entitled to rely on that restriction. Punishment for the offense is increased by the removal of the statutory restriction, and such an increase in punishment constitutes an* ex post facto *law.*

*Scott*, 55 S.W.3d at 597–98 (selected footnotes omitted)(emphasis added).

Unlike Scott, appellant was found guilty by the trial court in 1996, and assessed a fine and incarceration in the county jail. However, the trial court also placed appellant on community supervision in lieu of incarceration, which appellant successfully completed. At the time of appellant's 1996 community supervision, the statutory provision explaining the significance of successful completion of community supervision was TEX.CODE CRIM. PROC. ANN. art. 42.12, sec. 20(a) (Vernon Supp.2004) which read in pertinent part as follows:

Upon the satisfactory fulfillment of the conditions of community supervision, and the expiration of the period of community supervision, the judge, by order duly entered, shall amend or modify the original sentence imposed, if necessary, to conform to the community supervision period and shall discharge the defendant. If the judge discharges the defendant under this section, the judge may set aside the verdict or permit the defendant to withdraw his plea, and shall dismiss the accusation, complaint, information or indictment against the defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted or to which he has pleaded guilty, . . .

In *Cuellar v. State*, 70 S.W.3d 815, 818 (Tex.Crim.App.2002), a plurality of the

---

**6.** Citing to *McDonald v. Massachusetts,* 180 U.S. 311, 313–14, 21 S.Ct. 389, 45 L.Ed. 542 (1901).

Court construed the portion of article 42.12, sec. 20(a), set out above, as containing "two entirely different types of 'discharge' from felony community supervision[.]" Under the first type of "discharge," the defendant "has paid his debt to society and, in effect, 'graduates' from community supervision." *Id.* Nevertheless, this type of discharge does not erase the defendant's conviction, but a successfully completed regular community supervision is not normally considered a "final conviction" for enhancement purposes. *Id. See also Ex parte Langley,* 833 S.W.2d 141, 143 (Tex.Crim.App.1992); *Ex parte Murchison,* 560 S.W.2d 654, 656 (Tex.Crim.App.1978).

The second type of "discharge" noted in *Cuellar* is less common and is not a right, but a matter of "judicial clemency" within the trial court's sole discretion. *Cuellar,* 70 S.W.3d at 819. This occurs when the judge exercises his discretion and sets aside the verdict or permits a defendant to withdraw his plea, which triggers the judge's dismissing the charging instrument, which results in the defendant's being "released from all penalties and disabilities resulting from the offense or crime of which he has been convicted or to which he has pleaded guilty." *Id.* Because the defendant in *Cuellar* had secured a written order from the judge in his prior community supervision setting aside the "judgment of conviction" and dismissing the indictment following his successful completion of community supervision, he could not subsequently be charged as a "felon" in possession of a firearm. *Id.* at 816, 820. As the plurality concluded, "[o]nce the trial court judge signs the Article 42.12, § 20, order, the felony conviction disappears, except as specifically noted in subsections (1) and (2)." *Id.* at 820.

We note that *Cuellar* was not a case involving the application of *ex post facto*

law. We also note that, on its face, section 20(a) does not contain an "explicit limitation on the collateral consequences" of a successfully completed term of regular community supervision when compared with the language in section 5(c) regarding a successfully completed deferred adjudication community supervision. While the record before us indicates that appellant did successfully complete his term of regular community supervision, it does not contain an order from the trial judge, as in *Cuellar,* setting aside appellant's conviction and dismissing the 1993 family assault information. Unlike the language of article 42.12, sec. 5(c) before the Court in *Scott,* we do not see the provisions of article 42.12, sec. 20(a) as "explicitly" restricting the collateral consequences of a successfully completed regular community supervision. At most, any restriction on the collateral consequences of a successfully completed term of regular community supervision on the face of section 20(a) seems limited to a defendant who obtains a written court order formally setting aside his prior judgment of conviction and dismissing the instrument used to charge him with the crime. As the instant appellant had no such court order, we cannot say he was entitled to rely on section 20(a) to shield him from the collateral consequences of his 1996 conviction. As such, we conclude that the punishment for the two instant offenses was not increased by the legislature's passage of sub-section (f) of section 22.01 in 1999. Therefore, the use of the 1996 conviction in each indictment was not a use of prohibited *ex post facto* legislation. As the constitutional prohibitions against passage of any *ex post facto* law are systemic requirements and, therefore, un-waivable, we were required to address the issue although not framed before the trial court or this Court in the manner addressed. *See Mendez v. State,* 138 S.W.3d 334, 340–41 (Tex.Crim.App.

2004). We overrule this unassigned issue and affirm both judgments of the trial court.

JUDGMENTS IN BOTH CAUSES AFFIRMED.

GAULTNEY, Justice, concurs.

DAVID GAULTNEY, Justice, concurring.

I concur, but join only in the majority's treatment of the issue raised by appellant and in the affirmance of the judgments. The majority writes persuasively on an issue not raised by appellant. If fundamental error exists it should be corrected, and the issue raised by the majority is related to appellant's issue. But I do not believe a court should raise an issue on its own and then overrule the unassigned issue as without merit. The opportunities to do that are endless.